STATE HIGHWAY & PUBLIC WORKS COMMISSION OF NORTH CAROLINA, AN AGENCY OF THE STATE OF NORTH CAROLINA, v. DIAMOND STEAMSHIP TRANSPORTATION CORPORATION.

(Filed 23 May, 1945.)

**1. Process § 6b—**

No satisfactory general definition can be made of the phrase "doing business" as found in our statutes. The question is one of fact, and must be determined largely according to the facts of each individual case. The objective of the law in which the phrase is found must also be considered.

**2. Same—**

The purpose of G. S., 55-38, was, in recognition of reciprocal duties, to prevent a foreign corporation from accepting protection of our laws in the transaction of its ordinary business, create obligations and, by reason of its remoteness from any forum available to a local citizen, secure im-

munity from liability. Within reasonable limits the statute should be liberally construed to accomplish its remedial purpose.

**3. Same—**

In an action by a resident of this State against a foreign corporation, commenced by the issuance of summons and service thereof upon the Secretary of State under G. S., 55-38, where, on objection to the jurisdiction by special appearance, the court, upon sufficient evidence, found that a vessel of defendant, a regular carrier of freight in the coastwise trade, entered the port of Wilmington and discharged a substantial part of its valuable cargo in the regular course of business, and was there damaged by striking a bridge and remained some months in said port, undergoing repairs and having considerable business dealings with local residents, the service of process upon the Secretary of State was valid and sufficient to bring defendant into court.

**4. Appearance § 1—**

Upon motion by special appearance to dismiss for want of service of process on defendant, this Court is bound by the findings of fact made by the court below, when there is sufficient evidence to support them.

**5. Process § 6b—**

The statute, G. S., 55-38, authorizes service of process on the Secretary of State, in an action by a resident of this State against a foreign corporation, after the business, once carried on by defendant, has been discontinued.

APPEAL by defendant from *Stevens, J.,* at October Term, 1944, of NEW HANOVER.

The plaintiff brought this action to recover damages from the defendant, a foreign corporation engaged in the coastwise trade along the Southeastern Seaboard, because of an injury to a bridge across Cape Fear River, alleged to have been caused by the negligent operation of one of the defendant's vessels, the *Severance.*

The plaintiff sought to bring the defendant into court by service of summons upon the Secretary of State under the provisions of G. S., 55-38, which reads as follows:

"Every corporation having property or doing business in this state, whether incorporated under its laws or not, shall have an officer or agent in the state upon whom process in all actions or proceedings against it can be served. A corporation failing to comply with the provisions of this section is liable to a forfeiture of its charter, or to the revocation of its license to do business in this state. In the latter event, process in an action or proceeding against the corporation may be served upon the secretary of state by leaving a true copy thereof with him, and he shall mail the copy to the president, secretary or other officer of the corporation upon whom, if residing in this state, service could be made. For

this service to be performed by the secretary, he shall receive a fee of fifty cents, to be paid by the party at whose instance the service was made."

The plaintiff also caused service of summons to be made upon one C. D. Maffitt as defendant's local agent.

The defendant entered a special appearance and moved to dismiss the action for want of service of summons, contending that it was not, and had not been, doing business in this State within the meaning of the above cited statute, and that Maffitt was not an agent within the definition of the statute upon whom service of process could be made.

Pertinent to a decision in this matter, the judge found the following facts, which he embodied in an order adjudging the service on the Secretary of State to be valid:

"The defendant is a corporation engaged in carrying freight for hire by vessel; it owned the steamship, *Severance,* and operated her in the coast-wise shipping trade, and in such trade it took on a cargo of sulphur in Texas and discharged some of its cargo to consignees in Charleston, S. C., it hired and employed a pilot in Wilmington, N. C., to go to Charleston and bring the *Severance* into the port of Wilmington on November 22, 1940. The defendant employed and paid and provisioned the captain and crew. At Wilmington the defendant discharged part of its cargo by lighters to one consignee, and anchored in the anchorage at Wilmington and employed another pilot and tugs to assist it in going up the river to deliver the balance of its cargo of sulphur to two or more consignees, and on the way up the river on November 23, 1940, it collided with and negligently ran into and damaged the Fender Piling System and Lighting System of the plaintiff's bridge spanning the Cape Fear River—the same being a fixed structure—and damaging the plaintiff in a considerable sum, for which damage this suit is brought, and which the defendant owes the plaintiff. The cargo discharged in this State was worth upwards of $200,000. The defendant employed an agent at Wilmington, namely, C. D. Maffitt, and some of its officers came to Wilmington to attend to different matters for said defendant, but it did not designate a process agent or domesticate as is provided for in North Carolina statutes, the defendant employed a good many people to do work on the ship, to raise it, to do repairs, and bought provisions amounting to several hundred dollars over a period of more than two months. After the employees raised the ship, the ship proceeded up the river and discharged its cargo, and the defendant employed another pilot and tugs for this trip, and employed a pilot to carry it out to sea. Different purchases were made from different people, from the foundry and iron works and others; the vessel was later brought back into the port of Wilmington and was moored at a dock where it stayed for more than

thirty (30) days, during which time the defendant employed various people to do different kinds of work on said vessel and about it, paid wharfage and entered into numerous contracts with reference to its ship, and thereafter it employed a pilot to navigate it down the river and out to sea, all of which occurred in November and December, 1940, and in January, 1941, and during the hearing of this motion it was admitted by defendant's counsel in open court that at the times in question the defendant was doing such business in North Carolina, and the Court finds as a fact that the defendant was doing business in the State of North Carolina in December, 1940, and January, 1941, and constituted the Secretary of State of North Carolina as its process agent, upon whom process might be served in any suit arising out of such business transacted in this State; and the process in this case was served on C. D. Maffitt on January 26, 1944, and on the Secretary of State of North Carolina on February 3, 1944, who has sent a copy to the defendant, which it has received, and the defendant since shortly after January, 1941, has had some property in the State of North Carolina and still has the same, being deposit for Court cost in the U. S. District Court, and the Court being of opinion that under the statutes of this State, as construed by the Supreme Court, the defendant has irrevocably constituted and appointed the Secretary of State as its process agent in North Carolina, and that said process was properly served, so finds, and it is

"ORDERED, CONSIDERED, AND ADJUDGED that the defendant's motion be, and the same is hereby denied, and it is adjudged that the process was properly served on the defendant, and that it is in Court, and it is further ordered, considered, and adjudged that the defendant have thirty (30) days to file answer or other pleading."

To the foregoing order defendant excepted and appealed to this Court.

*Charles Ross, General Counsel; I. C. Wright, Special Counsel—for plaintiff, appellee.*

*Rountree & Rountree for defendant, appellant.*

SEAWELL, J.    Only the validity of the service of process on the Secretary of State was passed on by the court below and is presented on this appeal.    That validity depends upon an affirmative answer to two questions, to which the controversy has been narrowed in the argument: Was the defendant doing business in this State, upon the facts found by Judge Stevens?    Does the statute authorize service of process on the Secretary of State after the business, once carried on, has been discontinued?

It has been frequently pointed out that no satisfactory general definition can be made of the phrase "doing business" as found in our statutes,

and that, generally speaking, each case must be determined on its own facts. "No all-embracing rule as to what is 'doing business' has been laid down. The question is one of fact, and must be determined largely according to the facts of each individual case, rather than by the application of fixed, definite, and precise rules." *Timber Co. v. Ins. Co.,* 192 N. C., 115, 133 S. E., 424; *C. T. H. Corporation v. Maxwell,* 212 N. C., 803, 195 S. E., 36.

The objective of the law in which the phrase is found—its purpose and orientation to the carrying on of business—must also be considered. For instance, licensing and taxing laws have been held to contemplate more extensive activities than would be required of a statute the purpose of which is to bring a corporation into the jurisdiction of the court. In *Knutson v. Campbell,* 300 F., 241, this distinction is recognized.

" 'Doing business,' to bring an alien within jurisdiction of local courts, does not mean that corporation must maintain such relation to 'doing business' as to bring it within statute requiring license, though enough business must be done to enable court to say that corporation is present." *C. T. H. Corporation v. Maxwell, supra.*

In *Parris v. Fischer Co.,* 219 N. C., 292, 13 S. E. (2d), 540, it is said: "The doing of a single act pertaining to a particular transaction will not be considered doing business, as the phrase denotes some degree of continuity. . . . But this rule does not apply when the evidence permits the inference that the act is done pursuant to a course of business, and indicates the intention to engage in a continuing business in the State, rather than in a single, isolated transaction."

The Court has been careful not to bring within the purview of the statute sporadic activities of a foreign corporation which are not directly in performance of its charter functions, or which are not of such a character as to indicate a course of business which might be expected to recur as opportunity offered; but the nature of the activities themselves, their magnitude, the multiplicity of contacts, the possibility that incidents may occur and liabilities be created—especially where the entrance into the State is in the ordinary prosecution of the business which the corporation is chartered to carry on and is carrying on, and which definitely regards the State as a theater for future transactions of a like sort as often as occasion might arise—these are important considerations in determining whether a corporation is, in a given instance, doing business in the State. On a single visitation to the State the matter in hand may explode into a multitude of transactions of far-reaching importance.

Perhaps what is said by *Chief Justice Stacy* in *Ruark v. Trust Co.,* 206 N. C., 564, 174 S. E., 441, comes as near to the solution of the problem as anything yet devised: "The expression 'doing business in this State' as used in C. S., 1137, means engaging in, carrying on, or exer-

cising in this State, some of the things, or some of the functions, for which the corporation was created."

Reference to the purpose of the statute may throw some light upon the propriety of its application in particular instances, as in this. Obviously, that purpose was, in recognition of reciprocal duties, to prevent a foreign corporation from accepting the protection of our laws in the transaction of its ordinary business, create obligations, and by reason of its remoteness from any forum available to a local citizen, secure immunity from liability. Within reasonable limits the statute should be liberally construed to accomplish its remedial purpose.

In the case before us; the single trip of the *Severance* into our waters resolved itself into numerous transactions, lasting over a considerable period of time, and in one alleged liability of considerable moment. The *Severance* entered the port and discharged a part of its cargo in the regular course of the business for which it had been chartered, and as a regular carrier of freight in the coastwise trade, was not making a casual entry into port, but one which would be repeated as often as it could obtain a cargo. Under the construction of the statute contended for by the appellant, the *Severance* might ply its trade in every port from Seattle to Bangor and back again, leaving a trail of obligations in its wake, and never "do business" in any state, or become subject to any statute designed to bring it into court upon that basis.

The statute imposes no hardship upon the corporation comparable to that which would be imposed upon the ordinary citizen by forcing him to bring his suit in a distant court. It is a manifestation in the law of the principle of "live and let live"; and we are of the opinion that appellant accepted its terms when, under the conditions set out, it entered the Port of Wilmington and engaged in the various activities disclosed in the findings of fact. *Anderson v. U. S. Fidelity Co.,* 174 N. C., 417, 93 S. E., 948.

The evidence is sufficient to support the findings of fact made by the court below, and we are bound by them. *Shoenith, Inc., v. Mfg. Co.,* 220 N. C., 390, 391, 17 S. E. (2d), 350.

We do not regard the second query—that is, whether the statute authorizes service upon the Secretary of State upon discontinuance of the business out of which the obligation arises—as an open question here. In *Fisher v. Ins. Co.,* 136 N. C., 217, 225, 48 S. E., 667, *Justice Walker,* speaking for the Court, said: "The fact that the defendant had ceased to do business in this State, if such is a fact, cannot affect our conclusion. If it had taken out a license to do business in the State, it could neither revoke it, nor could it withdraw from the State to the plaintiff's prejudice. The statute will not cease to operate as to it until its debts due to

citizens of this State are paid." *Sisk v. Motor Freight, Inc.,* 222 N. C., 631, 24 S. E. (2d), 488.

We think the service of process upon the Secretary of State is valid, and sufficient to bring the defendant into court, and we so hold.

Judgment of the lower court is
Affirmed.