UNITED STATES, as owner of UNITED
STATES COAST GUARD VESSEL
CHILULA

v.

TUG PARRIS ISLAND, her engines, boil-
ers, etc., in rem and T–2 TANKER,
in rem.

UNITED STATES, as owner of United
States Coast Guard Vessel Chilula

v.

The TUG MANIE, her engines, boilers,
in rem

v.

The CARTERET TOWING CO., Inc., in
personam, in a cause of collision
civil and maritime.

Nos. 251, 253.

United States District Court
E. D. North Carolina,
New Bern Division.

Feb. 15, 1963.

See also 215 F.Supp. 144.

Robert H. Cowen, U. S. Atty., Eastern
District of North Carolina, Raleigh, N. C.,
Alan Raywid, Attorney, Admiralty &
Shipping Section, United States Depart-
ment of Justice, Washington, D. C., for
libellants in consolidated actings.

George H. McNeill, Morehead City,
N. C., Robert M. Hughes, III, of Seawell,
McCoy, Winston & Dalton, Norfolk, Va.,
for claimant Linea de Navegacion Rio
S. A., in personam, and tug Parris Island,
in rem.

C. R. Wheatly, Jr., Beaufort, N. C.,
John G. deRoos, of Bigham, Englar,
Jones & Houston, New York City, for
Standard Dredging Corporation, respond-
ent claimant, in rem, T–2 tanker midsec-
tion.

George T. Clark, Jr., of Rountree &
Clark, Wilmington, N. C., for Carteret
Towing Co., in personam, respondent
claimant; and, proctor for tug Manie, in
rem.

John P. Harper, of Worthington, White
& Harper, Norfolk, Va., A. D. Ward, New
Bern, N. C., for A. T. Piner, impleaded
respondent and impleading petitioner.

L. A. Smith, of Barden, Stith & Mc-
Cotter, New Bern, N. C., Kirlin, Campbell
& Keating, New York City, for Standard
Dredging Corporation, in personam, im-
pleaded respondent.

LARKINS, District Judge.

These actions arose as a result of a
collision which occurred on or about
January 13, 1958, in the Harbor of More-
head City, North Carolina, when a T–2
tanker midsection in tow of the Honduran

tug "PARRIS ISLAND" and the local harbor tug "MANIE" struck and damaged the moored United States Coast Guard Cutter "CHILULA".

### FACTS

The Honduran ocean-going tug "PARRIS ISLAND", owned and operated by Linea de Navegacion Rio, S. A., was under time charter to Standard Dredging Corporation, claimant of the T-2 tanker midsection. A monition against the T-2 tanker midsection *in rem* was served, and an attempt to implead Standard Dredging Corporation *in personam* has been made.

In October, 1957 the Standard Dredging Corporation entered into a time charter with the owners of the tug "PARRIS ISLAND" under the terms of which the tug was to tow the "T-293", a T-2 tanker midship section, 293 feet in length, and the barge "MARY A. DONNELLY", both owned by Standard Dredging Corporation, to Santiago de Cuba. While enroute, late in November, 1957, storms at sea broke up the tow; and, the flotilla, assisted by the United States Coast Guard Cutter "CHILULA" went into Morehead City, North Carolina as a port of refuge. The T-2 tanker midsection remained at anchor in Morehead City, North Carolina while the "PARRIS ISLAND" delivered the "DONNELLY" to its destination, and returned to Morehead City, North Carolina about January 12, 1958 to take the T-2 tanker midsection in tow.

On January 13, 1958, an officer of the time charterer, Standard Dredging Corporation, engaged the Carteret Towing Company and their tug "MANIE" to assist the "PARRIS ISLAND" in raising the anchors of the T-2 tanker and getting the hulk ready for sea. The Carteret Towing Company and the "MANIE" are owned and operated by A. T. Piner and his sons, who are also the authorized compulsory North Carolina State and Federal pilots.

Because of the adverse weather conditions the T-2 tanker was being towed to the North Carolina State Port Authority pier rather than to sea. While so doing, the T-2 tanker was being towed by the "PARRIS ISLAND" navigating under the direction of Pilot A. T. Piner and her Master. The T-2 tanker was being assisted by the tug "MANIE" with Pilot C. H. Piner assisting in the direction of the navigation from on board the T-2 tanker hulk. While so proceeding to a berth the T-2 tanker came into contact with, and damaged the moored United States Coast Guard Cutter "CHILULA".

When the flotilla originally went into Morehead City, North Carolina, as a port of refuge, Heide & Co., represented by Mr. Robert L. Hicks, was engaged to act as local ship agents. Mr. Hicks was to act as local "husbanding agent" at Morehead City, North Carolina for the limited purpose of assisting the tug "PARRIS ISLAND" and her tow, while the tug was at the port. The said Heide & Co., Inc., was not general agent of Standard Dredging Corporation, but was engaged to perform only certain limited duties, consisting generally of clearing the vessel at the custom house and arranging for supplies and necessaries while the vessel was in port. Heide & Co., Inc., exercised no discretion or control over the operation or movement of the tug "PARRIS ISLAND" or her tow. The contract of Standard Dredging Corporation with Heide & Co., Inc., was not a continuing contract but a single instance of employment made necessary by the vessels putting into Morehead City as a port of refuge, and terminated with the departure of the vessel from the port on January 13, 1958, and final payment of account was made to them about January 23, 1958.

Immediately after the collision the United States libelled the tug "PARRIS ISLAND" and the hulk T-2 tanker midsection *in rem*. Subsequently, the owners of the tug "PARRIS ISLAND" impleaded the time charterer, Standard Dredging Corporation, and Pilot A. T. Piner *in personam*. Process thereunder was served on Mr. Robert L. Hicks on March 28, 1958. Pilot A. T. Piner further impleaded Standard Dredging Corporation *in personam* and process thereunder was served on Mr. Hicks on June 9, 1959.

The Standard Dredging Corporation *in personam,* through its proctor, has made a special appearance and filed a motion to dismiss because of lack of jurisdiction. Specifically, Standard Dredging Corporation contends that there has not been any valid service of process on it because it was not doing business in the State of North Carolina, or in this District. And further, that there are no statutes of the State of North Carolina upon which any service of process could be obtained upon it by delivery of the same to the office of the Secretary of State of North Carolina, and such purported service is void and of no force and effect whatsoever. Further, that no service has been obtained upon the Standard Dredging Corporation *in personam* within the State of North Carolina, and the Secretary of State of North Carolina was without any valid power or authority to do anything whatsoever to obtain service of any process, and particularly the monitions in question.

## CONCLUSIONS OF LAW

The Standard Dredging Corporation is a corporation organized and existing under the laws of the State of Delaware and is a corporation foreign to the State of North Carolina. The Standard Dredging Corporation has made a motion to quash the service of process and to dismiss the action against it *in personam* because it was not doing business, and present in North Carolina, and this District, at the time the alleged cause of action arose.

The question presented in this: Was Standard Dredging Corporation doing business in North Carolina, and, therefore, amenable to service of process in North Carolina and this District? I think not.

Service of process was made upon Standard Dredging Corporation by the service of the libel upon Mr. Robert L. Hicks, an employee of Heide & Co., Inc. Also, service was made upon the Secretary of the State of North Carolina pursuant to Rule 4(d) (7) of Federal Rules of Civil Procedure and North Carolina General Statutes, § 55–146.

The libellant relies heavily upon the case of State Highway & Public Works Comm. of N. C. v. Diamond S.S. Transportation, 225 N.C. 198, 34 S.E.2d 78 (1945), to sustain the service of process on Standard Dredging Corporation. The contention is made that the present action is identical to the situation in the Highway Comm. case. However, a study of the case will clearly show that the cases are distinguishable.

In the Highway Comm. case, the defendant's vessel "SEVERANCE" was delivering cargo to the Wilmington port when it damaged a bridge belonging to the plaintiff. The defendant was a corporation engaged in carrying freight for hire by vessel and operated the vessel "SEVERANCE" in the coastwise shipping trade. It was on its first trip to a North Carolina port and the North Carolina Supreme Court had the following to say in that respect:

> "In the case before us, the single trip of the Severance into our waters resolved itself into numerous transactions, lasting ever a considerable period of time, and in one alleged liability of considerable moment. The Severance entered the port and discharged a part of its cargo in the regular course of the business for which it had been chartered, and as a regular carrier of freight in the coastwise trade, was not making a casual entry into port, but one which would be repeated as often as it could obtain a cargo. * * *" Id. at 203, 34 S.E.2d at 81.

A statement by Chief Justice Stacy in Ruark v. Virginia Trust Co., 206 N.C. 564, 174 S.E. 441 (1934), is also pertinent:

> "The expression 'doing business in this State,' as used in C.S. § 1137, means engaging in, carrying on, or exercising, in this state, some of the things, or some of the functions, for which the corporation was created." Id. at 565, 174 S.E. at 442.

In the present action the impleaded respondent, Standard Dredging Corporation, was not in the Morehead City port

in the regular course of the business for which it had been chartered. The Standard Dredging Corporation was not conducting its regular course of business when the alleged damage occurred and its visit to the port was casual. Adverse weather conditions which broke up the flotilla made it necessary to enter the port as a port of refuge. Also, the fact that Standard Dredging Corporation entered into a time charter with Linea de Navegacion Rio, S. A. for the use of the tug "PARRIS ISLAND" conclusively shows that Standard was not engaging in its regular course of business.

In Parris v. Fischer & Co., 219 N.C. 292, 13 S.E.2d 540 (1941), it is said:

"The doing of a single act pertaining to a particular transaction will not be considered doing business, as the phrase denotes some degree of continuity. * * * But this rule does not apply when the evidence permits the inference that the act is done pursuant to a course of business, and indicates the intention to engage in a continuing business in the state, rather than in a single, isolated transaction." Id. at 298, 13 S.E.2d at 544.

In Highway Comm., supra, the "SEVERANCE" was making its first trip to North Carolina waters. However, due to its business it could be expected to return when cargo destined for North Carolina ports was received. In the present action, the uncontroverted facts permits the inference that the Standard Dredging Corporation did not have any plans for returning to North Carolina ports in the future. In fact, except for the inclement weather, it would not have visited the Morehead City port at all. Standard Dredging Corporation clearly had no intention to engage in a continuing business in North Carolina.

In Highway Comm. v. Transportation Corp., supra, the following was said:

"The Court has been careful not to bring within the purview of the statute sporadic activities of a foreign corporation which are not directly in performance of its charter functions, or which are not of such a character as to indicate a course of business which might be expected to recur as opportunity offered; but the nature of the activities themselves, their magnitude, the multiplicity of contacts, the possibility that incidents may occur and liabilities be created—especially where the entrance into the State is in the ordinary prosecution of the business which the corporation is chartered to carry on and is carrying on, and which definitely regards the State as a theater for future transactions of a like sort as often as occasion might arise—these are important considerations in determining whether a corporation is, in a given instance, doing business in the State. * * *" Id. at 202, 34 S.E.2d at 80.

Applying the above tests to the present action, the Standard Dredging Corporation was not doing business in North Carolina, and was not subject to service of process in this State or District. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The Court does not reach the question as to whether Robert L. Hicks was a proper agent upon whom service of process could be made. A determination that Standard Dredging Corporation was not doing business in North Carolina makes it unnecessary to answer this question.

Therefore, it is ORDERED, ADJUDGED, and DECREED that the motion by respondent, Standard Dredging Corporation *in personam,* to quash the service of process and to dismiss the action against Standard Dredging Corporation *in personam* is hereby allowed. It is SO ORDERED.

It is further ORDERED that the Clerk forthwith serve a copy of this Opinion and Order personally, or by United States Mail, upon all proctors of record.