**MECHANICAL CONTRACTORS ASSO-
CIATION OF AMERICA, INC., a cor-
poration, et al., Appellants,**

**v.**

**MECHANICAL CONTRACTORS ASSO-
CIATION OF NORTHERN CALIFOR-
NIA, INC., a corporation, Appellee.**

No. 18961.

United States Court of Appeals
Ninth Circuit.

Feb. 8, 1965.

Edgar H. Rowe, Charles A. Legge, Bronson, Bronson & McKinnon, San Francisco, Cal., Edward J. Ross, Breed, Abbott & Morgan, New York City, for appellant.

John J. Vlahos, Schofield, Hanson, Bridgett, Marcus & Jenkins, M. Maroni Smith, San Francisco, Cal., for appellee.

Harold T. Halfpenny, James F. Flanagan, Mary M. Shaw, Halfpenny, Hahn & Ryan, Chicago, Ill., for Natl. Assoc. of Wholesalers as amicus curiae.

Donald M. Counihan, John T. McMahon, Carretta & Counihan, Washington, D. C., for American Society of Assoc. Executives as amicus curiae.

Joseph R. Grodin, Neyhart & Grodin, San Francisco, Cal., for Local No. 38, United Assoc. of Journeymen & Apprentices of the Plumbing and Pipefitting Industry of the U. S. and Canada as amicus curiae.

Before JERTBERG, KOELSCH and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

Mechanical Contractors Association of America, Inc., (the National), appeals under 28 U.S.C. § 1292(b), and pursuant to our permission, from an order denying its motion to quash service of a summons and complaint and other accompanying documents, and to dismiss the complaint and the action. The action was brought by Mechanical Contractors Association of Northern California, Inc., (the Local), in the California Superior Court at San Francisco. The complaint alleges that the National is a New York corporation, having its principal office in New York; that it has no agent appointed for the service of process in California, and that the Local is a California corporation, having its principal office in San Francisco.

Service of process upon the National was first made by serving one of its officers in California. The National then removed the action to the United States District Court on grounds of diversity of citizenship, and there moved to quash the service on the ground that it had not been made in the manner prescribed by the California statute (Cal. Code Civ. Proc. §§ 410–411). This motion was

granted. The Local then obtained an order that service of the summons and complaint be made upon the National by delivering a copy of the process by hand to the Secretary of State of the State of California, and that the Secretary of State make service upon the National at 666 Third Avenue, New York, New York. This was based on the ground that the National was not qualified to do business in California, and on the representation that the National has been "doing business" in California.

Section 411, subdivision 2 of the Code of Civil Procedure of California provides for service of summons upon "* * * a foreign corporation * * * doing business in this State; in the manner provided by Sections 6500 to 6504, inclusive, of the Corporations Code." The sections of the Corporations Code that apply here are sections 6501–6503. Section 6501 provides for service of process upon the Secretary of State, when ordered by the judge, if the corporation has not designated an agent in the state for service of process and if certain named officers or agents (listed in section 6500) cannot be found in the State of California. The section requires that the order of the court shall set forth an address to which process shall be sent by the Secretary of State. Section 6502 requires the Secretary of State to forward a copy of the process and of the order of the court by registered air mail, charges prepaid, to the corporation at the address given. Section 6503 allows the corporation thirty days after delivery of the process to the Secretary of State within which to appear. The statutory procedure was followed, and there is no claim that the process was not duly mailed and received.

We first summarize the allegations of the complaint, which is verified by the Local's president. The National is an association made up of members located throughout the United States, consisting of individual business entities and of state, national and local groupings called affiliate associations. All of the members are engaged in the mechanical contracting industry. The Local is made up of thirty Northern California members and is an affiliate member of the National. The National has the customary purposes of a trade association and encourages its members to form affiliated local associations. It cooperates with the local associations in building their programs and providing a forum for discussion of association and industry matters in what is called the secretaries' conference. Among other activities, the Local has been acting as a collective bargaining agent for its members.

In 1962, in connection with collective bargaining activities in Northern California, certain of the Local's members, disagreeing with its activities, withdrew its authority to bargain for them and disrupted the established pattern of collective bargaining. As a result of this dispute, the National advised the Local that on March 6, 1963 the National's board would meet in Chicago to consider the "disaffiliation" of the Local. The meeting was attended part of the time by some of the board members of the Local. The next day, March 7, 1963, the National advised the Local that it was disaffiliated unless its board would immediately agree to the election of a new board, at which election the members of the Local who had resigned would be permitted to vote, with all questions as to eligibility to vote vested in the National, which would supervise and control eligibility and voting. The Local rejected this disaffiliation. The National then sent communications to the members of the Local and to other members of the mechanical contracting industry in Northern California stating that on March 27, 1963, a new mechanical contractors association was to be formed in San Francisco under the sponsorship of the National. A new corporation was formed for that purpose.

Unless the National's activities are restrained, the Local will be forced to breach its contracts with its members, will lose its members, will lose it collective bargaining rights and numerous rights arising out of collective bargaining

contracts, and will be destroyed. The Local will also be compelled to breach its collective bargaining contracts and such contracts as leases, insurance contracts, and others. An injunction is sought which would require the National to affiliate the Local, recognize it as a member in good standing of the National and restore to it the privileges of membership. Damages in an unnamed amount are sought and exemplary damages of $100,000 are asked. A declaratory judgment as to the respective rights and obligations of the Local and the National is also requested.

The motion to quash was heard upon affidavits and counter-affidavits, the testimony of the executive manager of the Local, and certain exhibits. From these we glean the following facts:

The nature of the business of the National is described in its constitution and by-laws. Its objects are stated to be to develop the mechanical contracting industry, to promote the interests and welfare of its members, to standardize the materials and methods used in the industry, to improve the character of work done and labor employed, to contribute by better public service to the advancement of the industry in all of its branches, to unify and make effective the work of local, state and regional associations within the declared objects of the National. The territory in which the National is to conduct its operations is the United States of America and its possessions, or territory under its control, and the Dominion of Canada. Members are corporations, firms and individuals who are regularly engaged in the mechanical contracting industry.

Affiliated associations are provided for. One type of affiliated association, a local association, is composed of individual memberships whose principal activities are limited to a particular city or a local district. Where members are organized into an affiliated association, membership in the National shall be held only through such affiliated association. The consent of the National is required for use of the words "mechanical contractor" or "me-

chanical contractors" as part of the name of any affiliated association, and in the event of "disaffiliation," the name of the local must be amended to eliminate such words. The constitution and by-laws of a local must conform "in general" to the constitution and by-laws of the National and must have the approval of its board of directors. All members of the National who, either themselves or through an affiliate, maintain an established branch within the jurisdiction of a local must make application for membership in the local. Where an affiliated local exists, a business applying for membership in the National must also be elected to the local. Dues are fixed on a graduated scale based upon the volume of business done by a member, and the affiliated local must assume the duty of collecting and forwarding to the National the dues of all of its members who are qualified for membership in the local. Termination of membership in a local also terminates membership in the National. Every local must file with the National copies of all current labor agreements to which it is signatory or which cover the employment of labor by its members.

An annual convention is to be held at a time and place to be fixed by the board of directors and there are detailed provisions governing the holding of the convention. There are also nine standing committees which are under the direction of the board of directors, and report to it prior to the annual convention. Their expenses are to be paid from appropriations made by the board. Some of the committees deal with technical subjects, such as air conditioning, refrigeration, boiler output, welding, and standards. There are also committees on apprenticeships, labor, statistical surveys, publications and membership. There is an Association Secretaries' Conference composed of the business managers or the secretaries of affiliated local, state, or regional associations and the executive vice president and secretary of the National. It meets at the discretion of the board of directors of the National for the free discussion of the problems confront-

ing the executive officers of affiliated associations and it places the results of its discussions at the disposal of the board of directors of the National. Payment of its expenses may be specifically authorized by the National's board.

The record discloses that the following activities have been conducted by the National in relation to the State of California: 82 of its 1100 members are located in California. Californians have from time to time been members of its standing committees and participated in their meetings, Californians have on occasions served as president and as other officers of the National, California members pay dues, amounting to between $3,000 and $6,000 annually, to the National through the Local and receive its publications. The National sends to its California members annual statistical studies, wage surveys and membership directories. There is available to California members through the National information regarding wage trends, work rules and the interpretation of court and administrative decisions in the field of labor. The National corresponds with the Local, some 15 to 20 letters per year being exchanged. The National held its convention in California in 1963, in 1958, in 1950, and in 1941. The Association Secretaries' Conference has twice been held in California during the past ten years. National's monthly magazine is sent to some 150 persons in California. The Local pays for subscriptions to the National's magazine that it has sent directly by the National to certain architects in California designated by the Local. The National solicits advertising in California for its magazine. On the other hand, the National has no office, no bank account, no agent, and conducts no ordinary commercial activities in California.

In November of 1962, representatives of the National visited California at the request of some 26 members or former members of the Local. The purpose of the visit is alleged to have been to "assist" these members. The executive vice president of the National again visited California in December of 1962 at the request of the president of the Local. In March of 1963 two officers of the National visited California to make arrangements for the annual national convention to be held in San Francisco the following May. During the month of March, a notice was mailed by the National to all its members in the San Francisco area stating that the Local is no longer affiliated with the National, but that the members remain members of the National. The National released publicity in California about the disaffiliation. An invitation was sent to persons engaged in the mechanical contracting industry, including all of the current and former members of the Local, by telegram dated March 26, reading as follows: "An organizing meeting of the Golden Gate Chapter Mechanical Contractors Association under the sponsorship of Mechanical Contractors Association of America will be held Wednesday March 27 Comstock Room Palace Hotel 2:30 P.M. You are urged to attend or send representatives with power to act for you." This was signed by the National's Executive Vice President. At that meeting between 30 and 35 contractors were present and 24 agreed to join the new association.

In support of its appeal the National makes two contentions which we need notice only briefly.

1. It first urges that the cause of action arose outside of California, the "disaffiliation" having occurred at the meeting of its board at Chicago, and that under those circumstances, service of process upon it under the California statute is prohibited by the Fourteenth Amendment to the United States Constitution, even if the National were doing business in California. In support of this position it relies primarily upon two decisions of the United States Supreme Court: Old Wayne Mut. Life Ass'n v. McDonough, 1907, 204 U.S. 8, 27 S.Ct. 236, 51 L.Ed. 345, and Simon v. Southern Railway, 1915, 236 U.S. 115, 35 S.Ct. 255, 55 L.Ed. 492. See also Missouri Pac. R. R. Co. v. Clarendon Boat Oar Co., 1922, 257 U.S. 533, 42 S.Ct. 210, 66 L.Ed. 354.

The Local claims that these decisions, insofar as they stand for the proposition asserted by the National, are no longer good law. We need not decide this question as we think the activity of the National in California in sponsoring the organization of a new local affiliate in California, and in interfering in other ways with the local, after it took the disaffiliation action in Chicago, arises out of or is directly related to the cause or causes of action stated in the complaint.

■ It is no answer to say, as the National urges, that under the California Code of Civil Procedure (see section 430, subdivision 5) and Federal Rules of Civil Procedure (Rule 10, subsection (b)), separate causes of action or claims are supposed to be stated separately. Both the California Code and the Federal Rules provide a remedy for failure to do so, either by demurrer or by motion, but the fact that more than one cause of action may be stated and that such causes of action are not stated separately hardly goes to the jurisdiction of the court.

■ Moreover, the decisions are clear that even though, in a technical sense, the facts giving rise to the cause of action may have occurred outside of the state, this is not a bar to the assertion of jurisdiction by the state, particularly where there are activities in the state which relate to the cause of action. That we think is certainly the case here. Some cases have held that, if a corporation is doing business in the forum state, it is immaterial that the cause of action arose elsewhere. Here, we need not go so far. (Compare Perkins v. Benguet Consol. Mining Co., 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485; Cohen v. American Window Glass Co., 2 Cir., 1942, 126 F.2d 111; Koninklijke Luchtvaart, etc. v. Superior Court, 1951, 107 Cal.App.2d 495, 237 P.2d 297; Jeter v. Austin Trailer Equipment Co., 1953, 122 Cal.App.2d 376, 265 P.2d 130; Florence Nightingale School of Nursing v. Superior Court, 1959, 168 Cal.App.2d 74, 335 P.2d 240; LeVecke v. Griesedieck Western Brewing Co., 9 Cir., 1956, 233 F.2d 772). Our decision in Dunn v. Cedar Rapids Engi-

neering Co., 9 Cir., 1945, 152 F.2d 733, rests upon a restricted construction of the California statutes as they then read. Since then, the California courts have given the present statutes a much less restricted scope.

■■ 2. It is claimed that the complaint seeks to inject the California court into the internal affairs of the National and that because the National is a New York corporation whose internal affairs are governed by New York law, the court should have declined jurisdiction. Insofar as the complaint seeks to re-affiliate the Local with the National it may be accurate to characterize it as an attempt to deal with the internal affairs of the National, but much more is involved, as the complaint also seeks damages and seeks to prevent the National from interfering with the affairs of the Local, and from setting up a rival organization, thus destroying the Local. These are hardly internal affairs of the National. Moreover, the question is not one of jurisdiction in the strict sense, but one of policy addressed to the sound discretion of the trial court. See Koster v. Lumbermens Mut. Cas. Co., 1947, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067; Williams v. Green Bay & W. R. Co., 1946, 326 U.S. 549, 66 S.Ct. 284, 90 L.Ed. 31.

■ 3. Was the National doing business in California within the meaning of the California Code section? This being a case originally filed in a California court, and the United States District Court having jurisdiction solely by reason of diversity of citizenship, and service having been made under Rule 4(e) of the Federal Rules of Civil Procedure in the manner specified in the state statute, we are governed by the decisions of the Supreme Court of California as to the scope and meaning of the California statute. To the extent that the California courts might give the statute a limited construction, we would be bound by that construction, even though the Fourteenth Amendment to the Constitution might permit a broader construction. See: Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Mining Co., 1917,

243 U.S. 93, 37 S.Ct. 344, 61 L.Ed. 610; Mitchell Furn. Co. v. Selden Breck Co., 1921, 257 U.S. 213, 42 S.Ct. 84, 66 L.Ed. 201; Missouri Pac. R. R. Co. v. Clarendon Boat Oar Co., supra; Lambert Run Coal Co. v. Baltimore & O. R. R. Co., 1922, 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671; Perkins v. Benguet Consol. Mining Co., supra; Jennings v. McCall Corp., 8 Cir., 1963, 320 F.2d 64; Dunn v. Cedar Rapids Engineering Co., supra. On the other hand, the extent of the possible reach of the California statute is limited only by the Fourteenth Amendment. Hanson v. Denckla, 1958, 357 U.S. 235, 250–251, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

■ The California courts have made it clear that the term "doing business in this state" is one that the courts have equated with such minimum contacts with the state that the maintenance of the suit does not offend traditional notions of fair play and substantial justice, and that whatever limitation it imposes is equivalent to that of the due process clause of the Fourteenth Amendment. They hold that doing business, as used in Cal. Code Civ.Proc. § 411 "is synonymous with the power of the state to subject foreign corporations to local process." Henry R. Jahn & Son v. Superior Court, 1958, 49 Cal.2d 855, 858, 323 P.2d 437, 439. Thus, in applying the California statute, we are to construe it as permitting the obtaining of jurisdiction over the National, unless to do so would exceed the limits imposed by the Fourteenth Amendment.

We have outlined the activities of the National in relation to California. The Local argues that those contacts with California which are part of its regular business, as distinguished from those arising from the Local's internal difficulties, constitute a doing of business by the National in California. The theory is that those activities are precisely the activities which the National was organized to do, and that they are therefore the doing of its business in this state, even though the business may be done largely by mail, (see: McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223), or through the Local affiliate.[1] *Amici curiae* representing the National Association of Wholesalers and the American Society of Association Executives urge that such activities do not constitute the doing of business within the state, and that to hold that they do would subject every national non-profit association to suit in any state in which it has members or affiliates. We leave the decision of this question to the time when a case may arrive which makes it necessary to decide it.

■ Here, there were additional activities by the National, namely, its sponsorship of a rival association, not merely by mail or telegraphic communication with the Local's members in California, but also by personal visits to California by National officers, by the release of publicity in California, by the incorporation of a proposed new affiliate in California, and by the holding of a meeting in California for that purpose. These activities relate directly to the cause or causes of action attempted to be stated in the complaint. They are the carrying out in California of one of the objectives of the National as stated in Article IX of its Constitution, relating to affiliated associations. We think that under these circumstances, the taking of jurisdiction by a California court, or by the district court on the basis of diversity of citizenship, by service of process as contemplated by the California codes, is not in-

1. Compare the following cases, cited by the Local: First Congregational Church v. Evangelical & R. Ch., S.D.N.Y., 1958, 160 F.Supp. 651, 663; B. K. Bruce Lodge, Inc. v. Subcommittee of Management of Grand United Order of Odd Fellows, 1924, 208 App.Div. 100, 203 N.Y.S. 149; State v. Knights of Ku Klux Klan, 1925, 117 Kan. 564, 232 P. 254, 37 A.L.R. 1267, appeal dismissed, 1927, 273 U.S. 664, 47 S.Ct. 453, 71 L.Ed. 829; Knights of Ku Klux Klan v. Commonwealth, 1924, 138 Va. 500, 122 S.E. 122, with cases cited by the National, Elizabeth Hospital, Inc. v. Richardson, W.D.Ark., 1958, 167 F.Supp. 155, 158; People ex rel. Solomon v. Brotherhood of Painters, 1916, 218 N.Y. 115, 112 N.E. 752.

consistent with due process. Here, there have been "such contacts of the corporation with the state of the forum as to make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there." International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, at 317, 66 S.Ct. 154, at 158, 90 L.Ed. 95. Here, the acts done in California, "because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit." Id. at 318, 66 S.Ct. at 159. In sponsoring the new affiliate and in holding a meeting in California for that purpose, we think that the National was exercising "the privilege of conducting activities within" California, and that in so doing it was enjoying the "benefits and protection of the laws" of California. Id. at 319, 66 S.Ct. at 160. Those activities can fairly be said to give rise to obligations which are connected with the activities of the National in California. We do not think that it deprives the National of due process to require it to respond in California to a suit which in part arises out of those activities. Florence Nightingale School of Nursing v. Superior Court, supra. We think that the totality of the facts shown by this record satisfies the three tests laid down by us in L. D. Reeder Contractors of Arizona v. Higgins Industries, Inc., 9 Cir., 1959, 265 F.2d 768, and Kourkene v. American B. B. R. Inc., 9 Cir., 1963, 313 F.2d 769. There has been the doing of some act, or the consummation of some transaction, within the forum. The claims of the Local arise out of or result from such act or transaction. And the act or transaction is of such a character that assumption of jurisdiction by California is consonant with due process.

The method of service of process here involved is not seriously attacked, nor could it be. This is not a case where service is made only upon a state official, who has then no duty to notify the corporation. Here the Secretary of State was required by the statute and the order of the court to mail the process, by registered mail, to the National in New York. Due process, insofar as it involves a requirement of actual notice, is satisfied. (Cf. Milliken v. Meyer, 1940, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278; Travelers Health Ass'n v. Virginia, 1950, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154.)

Nothing that we have said is to be taken as an intimation that we believe that the National's activities were necessarily wrongful, or that the Local has valid ground of complaint against the National. Those questions go to the merits of the case, which are not before us. All that we hold is that the National's activities in California were such as to make it permissible for the State of California to require the corporation which indulged in them in California to defend them in a California court, instead of requiring that the California plaintiff go to New York or to Illinois to vindicate its asserted rights.

The order is affirmed.