Peter S. **PAPPAS**, Administrator of the Estate of Aristides Staikos, deceased, Libelant,

v.

**STEAMSHIP ARISTIDIS**, her engines, etc., in rem, and Sociedad Armadora Aristomenis Panama, S.A., owners, etc., in personam, Respondents.

No. 8503.

United States District Court
E. D. Virginia,
Norfolk Division.

Aug. 31, 1965.

Howell, Anninos & Daugherty, Norfolk, Va., for libelant.

Vandeventer, Black, Meredith & Martin, Norfolk, Va., for respondent.

WALTER E. HOFFMAN, Chief Judge.

█ No *in rem* process having been effected, the libelant, who qualified as the personal representative of the decedent's estate on September 16, 1964, obtained a purported service upon the *in personam* respondent by serving the Clerk of the State Corporation Commission of Virginia. The action was filed in this Court only two days after the libelant's qualification as administrator. The respondent has filed a motion to quash the service of process. The question for determination is, of course, whether the *in personam* respondent was doing business or transacting affairs in Virginia (1) at the time the cause of action arose, (2) at the time the libel was filed, or (3) at the time service of process was effected upon the Clerk of the State Corporation Commission of Virginia under Title 8–60 and Title 13.1–119 of the Code of Virginia, 1950, as amended.[1]

As alleged in the libel the facts giving rise to this cause of action are that, on or about September 23, 1963, while the ARISTIDIS was docked at Wilmington, North Carolina—within the Eastern District of North Carolina—discharging potash, the libelant's decedent, a crew member aboard said vessel, was caused to fall by reason of the alleged unseaworthiness of the vessel and/or the alleged negligence of the *in personam* respondent. The seaman died a few hours thereafter in a hospital at Wilmington, North Carolina. The vessel was flying the flag of the Republic of Liberia. The *in personam* respondent is a Panamanian corporation. While the libel does not so allege, we assume that the deceased seaman was a Greek citizen and that his dependents similarly have no connection in Virginia.

The respondent's vessel ARISTIDIS, upon which the deceased was employed as a crewman, never entered Virginia waters from the date of the accident on September 23, 1960, to January 1, 1965.[2] Another vessel, the SS ARISTOTELIS, owned, operated, controlled or bareboat

1. No contention is advanced that the *in personam* respondent is amenable to service of process under Virginia's "long-arm" statute, §§ 8–81.2 and 8–81.3 of the Code of Virginia, 1950, as amended by the 1964 Act.

2. The answers to interrogatories were confined to the period beginning with the date of the accident on September 23, 1960, to January 1, 1965.

chartered by the *in personam* respondent made two visits to the Port of Hampton Roads within the approximate period of five years, same being as follows:

| Arrived | Departed |
| --- | --- |
| May 18, 1961 | May 23, 1961 |
| April 10, 1963 | April 15, 1963 |

Proctor for respondent concedes that these two visits were for the purpose of loading and/or unloading cargo.

■■ We find it necessary to consider only two authorities in the exhausted field of "doing business." In Moore-McCormack Lines, Inc. v. Bunge Corporation, 4 Cir., 307 F.2d 910, the Virginia law is considered and reference is made to Travelers Health Association v. Commonwealth, 188 Va. 877, 51 S.E.2d 263, aff. 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154, where the Supreme Court of Appeals of Virginia quoted extensively from the landmark case of International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, and relied upon the doctrine of traditional notions of fair play and substantial justice. In *Bunge*, the Fourth Circuit pointed out that while jurisdiction is not dependent upon the connection of the non-resident defendant with the transaction giving rise to the suit, yet it is a relevant factor for consideration on the question of jurisdiction. Further, the Fourth Circuit warns that, in line with Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, minimal contacts at least are a prerequisite to the exercise of jurisdiction.

■ Gkiafis v. Steamship Yiosonas, 4 Cir., 342 F.2d 546, applied Maryland law but dealt with the business of tramp ships. In that case the ship visited Maryland on four occasions prior to the accident and once following the accident. Significantly, the cause of action arose in Maryland and the seaman resided therein.[3] While the opinion of Judge Sobeloff holds that, under the circumstances there present, the respondent owner of only one vessel was amenable to service under Maryland law, certain comments in the opinion are important to note. In line with the decisions of the United States Supreme Court a finding of regular contacts with the forum state is not an indispensable predicate to the assertion of jurisdiction but, as Judge Sobeloff states, "The regularity test applies only when the commercial contact is insignificant in itself and the cause of action did not arise therefrom." In the matter under consideration it clearly appears that the "regularity test" should be applied as (1) the cause of action arose in North Carolina and is in no way connected with any business ever done in Virginia, and (2) the respondent's commercial contacts with Virginia have been confined to two trips in five years and are insignificant.

■ We recognize that North Carolina has held the owner of a tramp steamer to be doing business in that state where the vessel made only one visit to North Carolina, on which occasion the visit resulted in the property damage giving rise to the suit. State Highway & Public Works Commission v. Diamond S. S. Transp. Corp., 225 N.C. 198, 34 S.E. 2d 78, 81. We do not believe that one visit of a vessel to Virginia would come within the minimal contact requirement where the cause of action arose in another state. We express no opinion as to what Virginia would hold under like circumstances even if the cause of action arose in Virginia because of the new "long-arm" statute.

Manifestly, the respondent's motion to quash the service of process must be sustained. However, before dismissing this action from the docket the Court will en-

3. The opinion discusses the state's desire to protect its own residents, but points out that this "is not so often the case when injury happens to a nonresident, particularly an alien." In the present case we are not concerned with the Virginia administrator as he would be a mere stakeholder for the benefit of the seaman's dependents.

tertain a motion to transfer this action to an appropriate forum; said motion to be filed within fifteen (15) days after the entry of the order sustaining the motion to quash the service of process.