**GREAT AMERICAN INSURANCE COMPANY et al., Plaintiffs-Appellees,**

v.

**KATANI SHIPPING COMPANY, S. A., et al., Defendants-Appellants.**

**No. 24138.**

United States Court of Appeals, Ninth Circuit.

July 7, 1970.

Jack G. Knebel (argued), Norman B. Richards, Mark O. Kasanin, of McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendants-appellants.

John E. Droeger, (argued), Stephen McReavy, of Hall, Henry, Oliver & McReavy, Graham & James, Lillick, McHose, Wheat, Adams & Charles, of San Francisco, Cal., for plaintiffs-appellees.

Before CHAMBERS and CARTER, Circuit Judges, and PENCE,* District Judge.

PENCE, District Judge:

Here, we have again the ever recurring problems anent venue, and here again is reconfirmation of this court's observation in Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Ass'n, 9 Cir., 1965, 344 F.2d 860, 863, that the only rule of law which is uniformly applicable in all cases involving venue is: the decision depends entirely upon the particular facts involved. So, therefore, to the facts!

Katani Shipping Company, S. A. (Katani) is a Panamanian corporation. It has never qualified to do business in

* Honorable Martin Pence, United States District Judge, District of Hawaii, sitting by designation.

California nor appointed an agent for service of process there. It has no resident officers, directors or employees or property in California, nor prior to the events hereafter related did it ever transact any business there.

Katani owns the Greek flag vessel SIMBA, and in March 1966 chartered it to Zim Israel Navigation Co., Ltd. (Zim), a shipping line operating between Mediterranean ports and North and South America. In December 1966 and January 1967 Zim accepted cargo at various Mediterranean ports for carriage aboard the SIMBA to ports in South America and on the West Coast of North America, using Zim's own bills of lading. On that voyage, in February 1967, at La Guaira, Venezuela, the SIMBA's engines broke down, could not be repaired there, Katani declared the voyage abandoned, and it became necessary to do something with the cargo on her.

Katani, as owner of the SIMBA, unilaterally deciding that a general average act had occurred, declared a general average[1] and set about preparing for a general average adjustment. Katani authorized Zim to collect security from cargo interests, and appointed Richard Arnold & Son of London, England, as Katani's average adjusters. Richard Arnold & Son authorized Zim's agents to sign general average bonds and cash deposit receipts for Katani. Zim then instructed its United States representative, American Israeli Shipping Co. Inc. to notify Zim's agents not to release cargoes until such general average security as specified by Katani was obtained from the cargo consignees. American Israeli thereupon notified Zim's Pacific Coast agents, Williams, Dimond & Company (Williams, Dimond) of San Francisco, California, to collect general average security as specified by Katani.

Williams, Dimond wrote to all West Coast cargo consignees advising them of abandonment of the voyage and of Katani's requirements of general average security. Lloyds Average Bonds were therefore signed by each cargo consignee, and by Williams, Dimond, as Katani's agent, and in addition, general average cash deposits were collected from 110 consignees (or their insurers) in California, Oregon, Washington and British Columbia. Each deposit was receipted for on a Lloyds Form General Average Deposit Receipt signed by Williams, Dimond, as agent for Katani. $68,000 was collected from the 84 (of the 110) consignees residing in California, now plaintiffs in this suit.

All the general average cash deposits were deposited in a trust account in London, England, in the joint names of Richard Arnold & Son, average adjusters, as Katani's trustee, and Hogg, Lindley & Co., average adjusters, appointed by Zim as the consignees' trustee.[2]

Katani had no other dealings with Williams, Dimond other than as above stated. Furthermore, it had no other business contacts or activities in California.

Plaintiffs, here, are subrogated cargo insurers, and individual or corporate cargo consignees. They ask for a determination that general average was unlawfully declared by Katani, return of the general average deposits, recovery of their transshipment freight charges from Venezuela, and damages for loss of or damage to cargo consigned to them.

Service of the complaint on Katani was made by serving Williams, Dimond.

Katani thereafter moved to dismiss for lack of jurisdiction over Katani and

---

1. Plaintiffs' Exhibit D (R. 134) indicates that Katani declared a general average immediately after breakdown, and asked each consignee for but a 5% general average guarantee in addition to a general average bond. This was superseded by the general average declaration here in litigation.

2. The SIMBA's cargo was discharged at La Guaira and transshipped by Zim to the West Coast ports.

insufficiency of service of process.[3] Its motion was denied and this appeal followed.

Although both parties before us have strained to inject any facets of admiralty law that possibly may be relevant into their respective briefs, nevertheless, stripping the foregoing facts down to the bare bones necessary for decision here, this is what occurred: Katani declared a general average on its ship and consignees' cargo. Katani's agent in the Northern District of California entered into general average bonds with and secured money deposits from the plaintiffs in California under a claim of right plus the coercive threat of "no tickee, no laundly." What Katani did with the bonds or money thereafter is not material for this opinion. Plaintiffs have sued for return of the money so paid to Katani and, in attacking the legality of Katani's declaration of a general average, thereby in effect seek to have the general average bonds invalidated and rescinded.

Katani here, by its agent Williams, Dimond, deliberately and intentionally entered into contracts with and demanded and took money from the plaintiffs in California, under claim of right here questioned.[4] Katani's unilateral declaration of a general average, and determination of the security it required before it would deliver the SIMBA cargo to the consignees, was certainly intended to be implemented and fulfilled, vis-à-vis Katani and the cargo consignees, in California, and to have its initial impact felt there.

Katani's claim that its entry into the California forum was the result of an accident rather than a conscious decision to conduct business there, (citing United States v. Tug Parris Island, E.D.N.C. 1963, 215 F.Supp. 149) is without merit. It was Katani's deliberate and solo decision to declare a general average and fix and demand security from the West Coast cargo consignees. Katani was not compelled by any factor save self interest so to declare and demand as it did. That Katani had no other contact with the forum than this "one" with each plaintiff will not release it. McGee v. International Life Ins. Co., 1957, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223.

We conclude, as did the district court, that Katani had such contacts "with the state of the forum as make it reasonable * * * to require [it] to defend the particular suit which is brought" here. International Shoe Co. v. Washington, 1945, 326 U.S. 310, 317, 66 S.Ct. 154, 90 L.Ed. 95. Katani's acts in California, viz., taking plaintiffs' deposits and entering into bonds with them, the legality of both acts here being attacked, "because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render [Katani] liable to suit" (id. at 318, 66 S.Ct. at 159),[5] and in so acting Katani exercised "the privilege of conducting activities" within California and enjoyed the "benefits and protection of the laws" (id. at 319, 66 S.Ct. at 160) of California.[6]

The three tests of L. D. Reeder Contractors of Arizona v. Higgins Indus-

---

3. Any issue on sufficiency of service has not been raised before this court and is therefore deemed waived.

4. Cf. Mechanical Contractors Assn. of America, Inc. v. Mechanical Contractors Assn. of No. California, Inc., 9 Cir., 1965, 342 F.2d 393; Courtesy Chevrolet, supra.

5. See also Liquid Carriers Corp. v. American Marine Corp., 2 Cir., 1967, 375 F.2d 951; United States v. Montreal Trust Company, 2 Cir., 1966, 358 F.2d 239, 243–244.

6. See also Hanson v. Denckla, 1958, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283. Cf. Agrashell, Inc. v. Bernard Sirotta Company, 2 Cir., 1965, 344 F.2d 583, 587–588, where Judge Waterman, in referring to two cases cited by Sirotta said, where "representatives of the foreign corporations went to the forum states in person to negotiate the contracts * * * [they] were protected by the laws of the forum states in a direct physical sense."

tries, Inc., 9 Cir., 1959, 265 F.2d 768 and Kourkene v. American BBR, Inc., 9 Cir., 1963, 313 F.2d 769, are here satisfied. Katani did an act, consummated a transaction in the Northern District of California. Plaintiffs' claims, in part, arise out of or result from such act or transaction, and the act or transaction is of such a character that assumption of jurisdiction by the district court is consonant with due process.[7] By so saying, we do no more than hold that Katani's activities in California were such as to make it constitutionally permissible for Katani to be required to defend this suit in the Northern District of California,[8] instead of requiring that the California plaintiffs go to Panama, or London, or before the High Court of Singapore[9] to vindicate their alleged rights.

Affirmed.

---

7. *Cf.* Duple Motor Bodies, Ltd. v. Hollingsworth, 9 Cir., 1969, 417 F.2d 231.

8. Katani's concern over multiplicity of suits in diverse jurisdictions is of no real moment, in view of relief now available under Rules 19–23, F.R.Civ.P., on joinder and class actions, as well as 28 U.S.C. § 1407.

9. Appellees' Brief, p. 20.