C. T. H. CORPORATION v. A. J. MAXWELL, COMMISSIONER OF REVENUE OF THE STATE OF NORTH CAROLINA.

(Filed 2 February, 1938.)

**1. Statutes § 5a—**

Where a statute uses words having a well known sense in the law, the words will be given that sense in construing the statute.

**2. Taxation § 27—Term "doing business" in this State defined.**

The words "doing business" in this State, as used in statutes imposing a corporate franchise tax, are to be broadly construed, and while an isolated business transaction is not sufficient to bring a corporation within the meaning of such statutes, a corporation comes within the statutes if it transacts within the State a substantial part of the business it was organized to perform.

**3. Same—Plaintiff corporation held "doing business" in this State within meaning of statutes levying franchise tax.**

The agreed statement of facts disclosed that plaintiff corporation, in accordance with the purpose of its organization, domesticated in this State and purchased land at foreclosure sales of mortgages held by a mortgage company, that it maintained an office and process agent in this State, but did not maintain an office here for the transaction of its business, but rented the properties purchased by it through local rental agencies, and constantly sent its officers and agents into the State on its business incident to the properties in this State to which it held title, and that the business transactions in this State incident to its properties were numerous and involved large sums of money, and constituted a sub-

stantial part of the business for which it was organized. *Held:* Plaintiff corporation was "doing business" in this State within the meaning of sec. 211 of the Revenue Acts of 1933 and 1935, imposing a corporate franchise tax on foreign corporations doing business in this State.

**4. Same—Findings held to disclose that plaintiff corporation was engaged in business in this State for profit and not solely as liquidating agent.**

A domesticated corporation cannot successfully maintain that its activities in this State were carried on solely for the purpose of liquidating the assets of another corporation without profit to itself and that therefore it was not "doing business" in this State within the meaning of statutes imposing a corporate franchise tax, when the agreed facts disclose that it purchased large numbers of tracts of land in this State at foreclosure sales of mortgages held by a mortgage company, then in receivership, paying for same by notes, secured by a deed of trust, payable solely from the proceeds derived from renting and selling the properties, with provision that upon sale or foreclosure the domesticated corporation should be entitled to any surplus over the amount necessary to discharge the mortgage note on the property, since the findings disclose that the domesticated corporation in liquidating the assets of the mortgage corporation was attempting to do so at a profit to itself.

**5. Same—**

The ownership of property for the purpose of computing the amount of corporate franchise taxes means the ownership of any valuable right in property, and not necessarily the ownership of the fee simple.

**6. Same—Plaintiff corporation held the owner of lands in this State for purpose of computing corporate franchise tax.**

A mortgage corporation became insolvent and its assets were transferred to a trustee for the benefit of bondholders. Plaintiff corporation was organized to purchase property at foreclosure sales of the mortgages, executing notes therefor in the amount invested in the property by the mortgage corporation which was secured by its bonds, the plaintiff's notes, secured by deeds of trust, being payable solely from sums derived from renting or sale of the properties, with provision giving plaintiff corporation power to rent, lease or sell the properties, with further provision that plaintiff corporation should be entitled to all sums derived from the liquidation of the assets over and above the amount necessary to discharge the collateral bonds of the mortgage corporation. *Held:* The properties purchased by plaintiff corporation in this State under the agreement were owned by it for the purpose of computing plaintiff's corporate franchise tax, and plaintiff's contention that it held title to said properties only as agent or trustee for the liquidation of the assets of the mortgage corporation is untenable.

APPEAL by plaintiff from *Sinclair, J.,* at September Civil Term, 1937, of WAKE.

Action for the recovery of franchise tax paid under protest, and alleged to have been illegally assessed.

Plaintiff, a corporation chartered 6 December, 1932, under the laws of the Commonwealth of Virginia and authorized to carry on the busi-

ness of buying, selling and otherwise dealing in real estate, on 7 December, 1932, filed in office of the Secretary of State of North Carolina a copy of its charter, duly attested, and otherwise fully complied with the laws of this State for domestication of a foreign corporation to do business in this State, and has not withdrawn such domestication proceedings, and thereunder was authorized and empowered as a foreign corporation to do business in this State for the years 1934 and 1935.

For franchise tax purposes plaintiff duly filed verified reports: (a) For 1934 in compliance with sec. 211 of Revenue Act of 1933, and (b) for 1935 in compliance with sec. 211 of the Revenue Act of 1935, in which the total assessed value of properties owned by it in North Carolina were stated to be (c) for 1 April, 1934, the sum of $368,172, and (d) for 1 April, 1935, the sum of $423,013. Franchise tax of $552.26, on basis of report for 1934, was assessed by defendant against and paid by plaintiff without protest on 25 June, 1935.

In consequence of a conference between representatives of plaintiff and defendant, plaintiff requested that it be allowed to file, and on 14 August, 1935, did file, a corrected return, duly verified, for each of the years 1934 and 1935, in which the total assessed value of its properties located in North Carolina, real estate only, is stated to be (1) $426,603 for 1934, situated in 26 towns and cities, and (2) $645,925, book or investment value $651,839.17, for 1935, situated in 28 towns and cities. On these returns franchise tax was assessed by defendant: (a) For 1934 in the amount of $639.90, or $87.64 in excess of the $552.26 theretofore assessed against and paid by plaintiff; (b) for 1935, in the amount of $1,140.72. On 11 May, 1936, the plaintiff paid to the defendant, under protest, the said balance for 1934, and all of the assessment for 1935, made due demand for refund and, upon refusal thereof, and after the lapse of the required period allowed by statute for repayment, instituted this action.

Further agreed facts are:

"7. That the Nolting First Mortgage Corporation, a Virginia corporation, for a number of years was engaged in the mortgage and loan business, which consisted of lending money on real estate, taking therefor real estate notes secured by deeds of trust of mortgages. Holding these notes as collateral, the corporation would then issue its own collateral first mortgage bonds which were sold to the public. The bonds were direct obligations of the corporation; they were issued in series and each series was secured by certain of the real estate notes hereinabove referred to.

"8. The business of the Nolting First Mortgage Corporation was materially affected by the depression and during the month of May, 1932, the corporation found that it would not be able to meet its col-

lateral trust bonds maturing on 1 June, because of the decrease in collections from underlying collateral. The corporation notified all of its bondholders of the situation and suggested that a bondholder's protective committee be formed to act for all of the bondholders. A committee was appointed by the bondholders and a program for the liquidation of the corporation was adopted. Pursuant to this program, a collateral trust agreement and a voting trust agreement, both dated 1 June, 1932, were executed. A printed copy of these agreements are attached hereto, marked 'Exhibit A.'

"9. Pursuant to the terms of the voting trust agreement, the entire management and control of the Nolting First Mortgage Corporation was vested in five voting trustees named therein. Under the terms of the collateral trust agreement the holders of Nolting First Mortgage Corporation collateral trust bonds deposited their bonds with the State-Planters Bank and Trust Company as trustee and received therefor new bonds dated 1 June, 1932. To secure this new issue of bonds the Nolting First Mortgage Corporation transferred all collateral held by it to the trustee as security for the bonds surrendered. The Nolting First Mortgage Corporation thereupon discontinued its regular business of negotiating mortgage loans, and since 1 June, 1932, it has confined its activities exclusively to the liquidation of the aforesaid mortgage notes. The *status* of the corporation with respect to these limited activities is that of agent for the collateral trust bondholders.

"10. The total principal amount of first mortgage notes held by Nolting First Mortgage Corporation as of 1 June, 1932, aggregated approximately $8,407,044, of which it is estimated that approximately $3,796,000 was secured by real estate located in the State of North Carolina."

In the Collateral Trust Agreement, Exhibit A, the parties are Nolting First Mortgage Corporation, called corporation, and Home Mortgage Corporation, to State-Planters Bank & Trust Company, trustee. The agreement provides *inter alia* "Art. VIII, sec. 1, If and when the principal of and on all the bonds of all series issued hereunder have been paid, or the corporation shall have deposited with the trustee for their benefit, the whole amount due on all the bonds of all series for principal and interest, and shall have fully performed every other obligation herein imposed on it, then the deposited collateral applicable to all series issued hereunder, and then remaining in the hands of the trustee, shall revert to the corporation, or its assigns."

The defendant, while admitting the statement of facts contained in paragraphs 7, 8, 9, and 10, denies that the same was relevant or material to the determination of the questions of law arising upon the other agreed facts set out herein.

Further agreed facts are: The issued capital stock of the plaintiff corporation was five shares of the par value of $1.00 each. Stock certificates were issued to five directors of the Nolting First Mortgage Corporation, which were endorsed by them and returned to the Nolting First Mortgage Corporation and delivered by that corporation to the trustees under the collateral trust agreement dated 1 June, 1932. At a meeting of the stockholders, of said corporation approving its by-laws at the organization meeting on 7 December, 1932, a resolution was adopted which in part provided as follows: ". . . That the purpose of its incorporation is that it may, in the event of foreclosure under any mortgage or deed of trust securing the payment of any part of the deposited collateral securing any bonds or series of bonds issued under the collateral trust agreement of 1 June, 1932, . . . acquire legal title" to such properties and hold the same for account of such bonds or series of bonds of the Nolting First Mortgage Corporation hereinbefore referred to. The officers and directors of the Nolting First Mortgage Corporation were the same as the officers and directors of the plaintiff corporation. In North Carolina the C. T. H. Corporation has acquired title to property from trustees at foreclosure sales when mortgage notes on such properties were held as collateral for collateral trust notes issued under the collateral trust agreement of 1 June, 1932, hereinbefore referred to.

In the granting clause in form of deed used in thus taking title, "C. T. H. Corporation, its successors and assigns," are named as grantees. In the *habendum* the following words are used: "To have and to hold . . . unto C. T. H. Corporation, its successors and assigns, in as full and ample manner as the said . . . trustees . . . are authorized and empowered to convey the same: In trust, nevertheless, to be held, managed, sold or otherwise disposed of, by the said party of the second part, as trustee for the lawful owners and holders of Nolting First Mortgage Corporation Bonds or Series '............' as their several interests may appear." Then there follows in minute descriptive detail an enumeration of all inclusive powers, authority, and rights of the C. T. H. Corporation with reference thereto, including the power "to deal with said real estate as if it were, and in every way exercise with respect thereto all the powers of, the fee simple owners thereof, in its own right."

All of the activities of the plaintiff corporation in the State of North Carolina for the years 1934 and 1935 were in connection with said properties and in accordance with the terms and provisions of the deeds so made to it. During said years the plaintiff corporation, acting under said conveyances, has held the said properties in trust and has managed, sold, and otherwise disposed of the same as trustee for the lawful

holders and owners of the particular Nolting First Mortgage Corporation collateral trust series secured by the said property as their several interests appeared.

Coincident with taking title to the said properties, the plaintiff corporation delivered to the Nolting First Mortgage Corporation, which in turn delivered to the trustee under the collateral trust agreement dated 1 June, 1932, a mortgage note in the amount of the investment of the collateral trust series in the particular property, and same was secured by deed of trust.

The form of note referred to is payable to bearer and contains provisions for payment "out of excess of income from the real estate upon which this note is secured over and above the expenses of holding, maintaining, and operating same, and/or of the net proceeds realized from the sale thereof, . . . but the maker shall not be liable to pay this note, either as to principal or interest, except to the extent of such excess income from and/or net proceeds of the sale of said real estate as may come into its hands." It is signed in the name of C. T. H. Corporation, by... .. ..... ....... ... This notation appears thereon: "This note must be kept for release deed."

In the form of deed of trust referred to the "C. T. H. Corporation" and not "C. T. H. Corporation, Trustee," is the grantor. The note secured thereby is described as above set forth. It contains provision that in the event of sale the trustee "shall pay the surplus, if any remain, to the party of the first part, its successors, or assigns"; and also the further provision "that if the said C. T. H. Corporation, its successors or assigns, shall pay off said note and discharge fully the trusts herein declared before such sale, or the same shall be done by a sale of part of said lands, then so much of said lands as may not have been sold, and are not required to meet any of said trusts, shall be reconveyed to said C. T. H. Corporation, its successors and/or assigns, at its, or their, own proper cost or the title thereto be revested in it, or them, according to the provisions of law."

During the tax years in question plaintiffs did not have any officers or employees on a fixed salary or wage stationed in the State of North Carolina, but its officers and employees did, from time to time, come into the State of North Carolina on its business incident to the properties to which it held title, as hereinbefore stated. The real estate, held as aforesaid, was rented through rental or real estate agents throughout the State of North Carolina, who were regularly engaged in said business as rental or real estate agents. The rents were collected for the plaintiff on a commission basis and paid over by such agents to the Nolting First Mortgage Corporation, to be held and disbursed by it under the terms of the Collateral Trust Agreement of 1 June, 1932, hereinbefore mentioned.

In the application to the Secretary of State of North Carolina for domestication, plaintiff stated that: "(2) The location of the registered office is at No. 906 Main St., Richmond, Va., and the location of the principal office in North Carolina is at Asheville (Jackson Bldg.), North Carolina, Buncombe County, and Kester Walton is the agent upon whom process may be served." Since its domestication plaintiff has maintained said office and process agent within this State, but did not during the tax years in controversy maintain any office in the State of North Carolina in which the business and affairs of the plaintiff corporation were conducted and carried on, except as hereinbefore stated.

Upon the foregoing findings of fact the court below concluded as a matter of law that plaintiff was doing business in this State and is liable for franchise tax for the years in question as assessed by defendant.

From judgment in accordance therewith, plaintiff appealed to the Supreme Court and assigned error.

*Murray Allen and J. Vaughan Gary for plaintiff, appellant.*
*Attorney-General Seawell and Assistant Attorneys-General McMullan and Bruton for defendant, appellee.*

WINBORNE, J. Two questions arise upon the decision below on the agreed facts presented on this appeal: (1) Was the plaintiff doing business in this State in the years 1934 and 1935 within the meaning of, and liable for franchise tax under, sec. 211 of the Revenue Acts of 1933 and 1935? (2) Is the real estate held by plaintiff, as described, "property in this State of" the plaintiff within the meaning of subsection 2 of sec. 211 of the Revenue Acts of 1933 and 1935 providing a basis for imposing a franchise tax? The court below ruled affirmatively as to each. This is in harmony with our views.

The Revenue Act of 1933 imposes a franchise tax upon "every foreign corporation doing business in this State and owning or using any part, or all, of its capital or plant in this State as of 1 April." Sec. 211, ch. 445, Public Laws 1933. The Revenue Act of 1935 imposes a like tax upon "every foreign corporation permitted to do business in this State and owning or using any part, or all, of its capital or plant in this State." Sec. 211, ch. 371, Public Laws 1935. The two sections differ only in descriptive phrases, "doing business" in the first, and "permitted to do business" in the second. Therefore, it is necessary first to determine the meaning of the words "doing business." On the view we take this as determinative of this phase of the controversy.

The rule applicable to the construction of statutes is that when they make use of words of definite and well known sense in the law, they are received and expounded in the same sense in the statute. *Asbury v.*

*Albemarle,* 162 N. C., 247, 78 S. E., 146; *Borders v. Cline, ante,* 472, 194 S. E., 826.

" 'Business' is that which occupies time, attention and labor of man for purposes of livelihood or profit," Bouvier's Law Dictionary. "It is a very comprehensive term, which embraces everything about which a person can be employed." Black's Law Dictionary.

The phrase "doing business in the State" has been the subject of consideration in several decisions of this Court with respect to the statute relating to service of process on foreign corporations. In *Timber Co. v. Ins. Co.,* 192 N. C., 115, 133 S. E., 524, *Connor, J.,* said: "No all-embracing rule as to what is 'doing business' has been laid down. The question is one of fact, and must be determined largely according to the facts of each individual case, rather than by the application of fixed, definite, and precise rules."

In *Commercial Trust Co. v. Gaines,* 193 N. C., 233, 136 S. E., 609, *Connor, J.,* said: "It has been generally held that a foreign corporation cannot be held to be doing business in a state, and therefore subject to its laws, unless it shall be found as a fact that such corporation has entered the state in which it is alleged to be doing business, and there transacted, by its officers, agents or other persons authorized to act for it, the business in which it is authorized to engaged by the state under whose laws it was created and organized. The presence within the state of such officers, agents or other persons, engaged in the transactions of the corporation's business with citizens of the state, is generally held as determinative of the question as to whether the corporation is doing business in the state," citing *Timber Co. v. Ins. Co., supra,* and other cases.

In *Ruark v. Trust Co.,* 206 N. C., 564, 174 S. E., 441, the defendant, a foreign corporation with no process officer or agent in the State, having been named as trustee in more than a hundred deeds of trust creating liens on property situate in North Carolina under which it was vested with title to the property described therein, and was authorized to take possession thereof, collect the rents and foreclose in case of default, had exercised the power of sale in a number of the deeds of trust, reported the same to the court and sent its agents into the State for the purpose of investigating and looking after the properties in its capacity as trustee, *Stacy, C. J.,* speaking to the question: "Is the defendant doing business in this State, or does it have property here so as to render it amenable to process under C. S., 1137?," said: "A similar fact situation appeared in *Reich v. Mortgage Corp.,* 204 N. C., 790, 168 S. E., 814, where the ruling that defendant owns property and is doing business in this State was upheld as a matter of course. The same conclusion seems to be well supported in the instant case (citing authorities). The

expression 'doing business in this State' as used in C. S., 1137, means engaging in, carrying on, or exercising in this State, some of the things, or some of the functions, for which the corporation was created." 14-A C. J., 1270. See, also, 12 R. C. L., 71.

A broader meaning is to be given the words "doing business" as used in a tax statute. Fletcher Cyclopedia Corporations, Vol. 18, p. 691, sec. 8804. An isolated sale or other business transaction is not sufficient to bring the corporation within that meaning. It is sufficient, however, "if a substantial part of its regular business is carried on." 37 Cyc., 859. The facts in the present case tend to show that plaintiff was doing in North Carolina a substantial part of the business for which it was organized.

The plaintiff contends, however, that it has not maintained an organization for the purpose of profit or gain, but, on the contrary, it was organized solely for the purpose of liquidating collateral bonds of Nolting First Mortgage Corporation, and that its activities have consisted of holding the legal title to properties purchased at foreclosure sales when mortgage notes on such properties were held as security for collateral trust bonds, and that, therefore, it was not "doing business in this State." It relies upon the decisions of the Supreme Court of the United States in *Zonne v. Minneapolis Syndicate,* 220 U. S., 187; *Mc-Coach v. R. R.,* 228 U. S., 295; and *U. S. v. Emery, Bird, Thayer Realty Co.,* 237 U. S., 28. These cases relate to a statute (36 Statutes at Large, ch. 6, sec. 38) which imposes special excise tax on corporation, . . . organized for profit . . . and engaged in business . . . with respect to the carrying on or doing business by such corporation." They are distinguishable from the instant case. In the case of *Von Baumbach v. Land Co.,* 242 U. S., 503, *Justice Day* reviews the decisions of the Supreme Court of the United States in these corporation tax cases, distinguishing those cases above holding that the corporations were not doing business, from those holding to the contrary, beginning with the case *Flint v. Stone Tracy Co.,* 220 U. S., 107. He states: "It is evident, from what this Court has said in dealing with the former cases, that the decision in each instance must depend upon the particular facts before the Court. The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails and doing only the acts necessary to continue that *status,* and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activites as are essential to those purposes."

In the instant case the plaintiff is distinct entity, separate and apart from the Nolting First Mortgage Corporation. It has voluntarily filed

its charter and become regularly domesticated with authority and power for itself as such to carry on real estate business in this State. It bought at trustees' sales real properties located in 28 towns and cities of the book or investment value of more than $650,000, and of assessed value of approximately that amount, as shown by its 1935 report, duly verified. It has given notes for the purchase price on parcels of property so purchased and secured same by deeds of trust, both in form tending to show activities in "holding, maintaining and operating same" with the view of ultimately discharging the indebtedness evidenced by the note, and realizing a surplus over and above the purchase price—a profit to it. It has leased its properties and sent its officers and employees into the State on business incident to its properties so purchased. Its business is not limited to an isolated case. The cases are numerous. The volume is large.

Plaintiff further contends that if it be liable for the franchise tax for the years in question, the recovery should be limited to $10.00 per year. It contends that "the entire capital consists of five shares of stock of the par value of $1 each and it has no surplus or undivided profits." The assessments are made under (1) that portion of subsection 2 of sec. 211 of ch. 445, Public Laws 1933 (Revenue Act of 1933), which reads: "The proportion of capital stock, surplus and undivided profits allocated for franchise taxation under this section shall in no case be less than the total assessed value of real and personal property in this State of each such foreign corporation;" and (2) that portion of subsection 2 of sec. 211 of ch. 371, Public Laws of 1935 (Revenue Act of 1935), which is *verbatim* of the above subsection of the 1933 act, with the following addition: "Not less than its investment and/or actual book value of real and personal property in this State."

Each statute further provides that "The tax imposed . . . shall in no case be less than ten dollars." The defendant, in assessing the franchise tax against the plaintiff for the years 1934 and 1935, used as the basis for determining the tax the assessed values of the real property in the State of North Carolina as were shown in the verified reports, as amended, filed by the plaintiff.

We, therefore, come to consider the second question:

Applying the rules of construction hereinabove stated to the words "property in this State of" as used in the portion of subsection 2, sec. 211 of the Revenue Acts of 1933 and 1935, does the real estate held by plaintiff come within their meaning? Webster defines "property" to be "the exclusive right to possess, enjoy, or dispose of a thing; ownership. In a broad sense, any valuable right or interest considered primarily as a source or element of wealth. In a narrower sense, 'property' implies exclusive ownership of things; as where a man owns a piece of land or a

horse. In a broader sense, 'property' includes in the modern legal systems practically all valuable rights."

This Court, in *Vann v. Edwards,* 135 N. C., 661, 47 S. E., 784, in an opinion by *Walker, J.,* speaking to the separate property of a married woman, said: "The word 'property' is of very broad signification. It is defined as rightful dominion over external objects; ownership; the unrestricted and exclusive right to a thing; the right to dispose of the substance of a thing in every legal way, to possess it, to use it and to exclude every one else from interfering with it. Property is the highest right a man can have to anything, being used for that right which one has to lands or tenements, goods or chattels, which no way depends on another man's courtesy. A right imparting to the owner a power of indefinite user, capable of being transmitted to universal successors by way of descent, and imparting to the owner the right of disposition," quoted and cited in part in *Stedman v. Winston-Salem,* 204 N. C., 204, 167 S. E., 813.

Webster defines "of" as "indicating the possessive relationship; belonging or pertaining to; or connected with." "Property of" does not necessarily mean ownership in fee simple. It means the ownership of any valuable right in property.

The facts in the present case tend to show conveyances to the plaintiff of property over and in which it is vested with power and authority tantamount to ownership in fee simple. An analysis of the enumerated powers makes it well nigh impossible to conceive of any right of control or ownership that has not been expressed. Then, too, the plaintiff has executed notes for the purchase price and has secured those notes with deeds of trust in the form usually used in real estate transactions for conveying property to which the grantor has fee simple title, with provision for revesting of title upon payment of the indebtedness. The plaintiff, through its proper officers, also has filed with the defendant reports duly verified in which it is stated that the property in question is owned by the plaintiff.

While the transactions have been ingeniously devised and executed, the facts lead us to the conclusion that the real estate comes within the purview of the statute. The plaintiff, when it domesticated, must have contemplated as much. It was of the same mind when it filed reports for franchise tax purposes.

The judgment below will be

Affirmed.