IN THE SUPREME COURT OF NORTH CAROLINA

Nos. 392A16 and 393PA16

Filed 18 August 2017

THE FIDELITY BANK,
                Petitioner

       v.

NORTH CAROLINA DEPARTMENT OF REVENUE,
                Respondent


On discretionary review pursuant to N.C.G.S. § 7A-31, prior to a determination by the Court of Appeals, of an opinion and order dated 3 May 2013 entered by Judge John R. Jolly, Jr., Chief Special Superior Court Judge for Complex Business Cases, in the Superior Court, Wake County, and appeal pursuant to N.C.G.S. § 7A-27(a) from a final judgment and order entered on 23 June 2016 entered by Judge Louis A. Bledsoe, III, Special Superior Court Judge for Complex Business Cases, in the Superior Court, Wake County. Heard in the Supreme Court on 13 June 2017.

*Ward and Smith, P.A., by Alexander C. Dale, Donalt J. Eglinton, and Amy P. Wang, for petitioner-appellant.*

*Joshua H. Stein, Attorney General, by Matthew W. Sawchak, Solicitor General, and Perry J. Pelaez, Assistant Attorney General, for respondent-appellee North Carolina Department of Revenue.*

ERVIN, Justice.

The principal issue before this Court in these consolidated appeals is whether the North Carolina Business Court correctly interpreted N.C.G.S. § 105-130.5(b)(1) so as to preclude The Fidelity Bank from deducting "Market Discount Income"

relating to discounted United States obligations for North Carolina corporate income taxation purposes. In view of the fact that the relevant portions of N.C.G.S. § 105-130.5(b)(1) clearly and unambiguously preclude the proposed deduction, we affirm the Business Court's substantive decision with respect to this issue while reversing the Business Court's decision to dismiss the second of the two judicial review petitions that Fidelity Bank filed in these cases and remanding that matter to the Business Court for further remand to the North Carolina Department of Revenue with instructions to vacate that portion of the Department's Second Amended Final Agency Decision relating to the deductibility issue for lack of subject matter jurisdiction.

Fidelity Bank, a C corporation, is a wholly owned subsidiary of Fidelity Bancshares, Inc. Fidelity Bank acquired United States government bonds at a discount to face value and held those discounted bonds until maturity, thereby earning income, generally referred to as Market Discount Income, consisting of the difference between the amount that Fidelity Bank initially paid for the bonds and the amount that it received relating to those discounted bonds at maturity. As a result of the fact that five of these discounted bonds matured during the 2001 tax year, Fidelity earned $724,098.00 in Market Discount Income related to the securities in question during that period. On its 2001 North Carolina corporate income tax return, Fidelity treated this Market Discount Income as taxable income and then deducted

this Market Discount Income as interest earned on United States government obligations for the purposes of determining its net taxable income.

On 8 July 2002, the Department issued a Notice of Corporate Income Tax Assessment to Fidelity Bank assessing additional North Carolina income taxes of $49,963.00 and associated interest in the amount of $1132.63 against Fidelity Bank based upon a determination that Fidelity Bank was not entitled to deduct this Market Discount Income for the 2001 tax year. On 31 July 2002, Fidelity Bank sent a protest letter to the Department objecting to the Notice of Assessment. On 17 May 2006, the Department sent a letter to Fidelity Bank imposing additional income taxes and associated interest based upon the rejection of Fidelity Bank's assertion that it was entitled to deduct the Market Discount Income that Fidelity Bank had earned on the bonds. On 12 September 2008, following further negotiations between the parties, the Department issued a Notice of Final Determination reiterating its decision to reject Fidelity Bank's attempt to deduct the Market Discount Income for state corporate income taxation purposes and seeking the payment of additional taxes plus associated interest.

On 11 November 2008, Fidelity Bank filed a Petition for a Contested Case Hearing challenging the Department's decision with respect to the deductibility of the Market Discount Income that Fidelity Bank had earned on the discounted bonds and requesting relief from the Department's claim for interest on the additional income tax amount that had been assessed against Fidelity Bank. On 30 June 2009,

the Administrative Law Judge entered an order granting partial summary judgment in favor of the Department on the grounds that the Market Discount Income relating to the discounted bonds was not deductible for North Carolina corporate income tax purposes.[1]  On 16 November 2009, the Administrative Law Judge granted partial summary judgment in Fidelity Bank's favor with respect to the Department's attempt to collect interest on the amount of unpaid taxes that the Department claimed that Fidelity Bank owed.  On 25 November 2009, the Administrative Law Judge's decision was submitted to the Department for the purpose of allowing the Department to make a final decision.[2]  On 22 January 2010, the Department issued a Final Agency Decision in which it adopted the Administrative Law Judge's decision with respect to the deductibility issue and remanded the case to the Administrative Law Judge for the making of further findings of fact relating to the interest abatement issue.[3]

On 24 February 2010, Fidelity Bank filed a petition for judicial review in the Superior Court, Wake County, for the purpose of challenging the Department's initial final agency decision.  The case stemming from the filing of Fidelity Bank's first

---

[1] The parties agreed that there were no disputed issues of material fact, so that this case could be appropriately resolved at the summary judgment stage of this contested case proceeding.

[2] According to the statutory provisions governing administrative proceedings in effect at the time, the Administrative Law Judge submitted a recommended decision to the Department, which made the final decision.  *See* N.C.G.S. § 150B-34 (2009), amended by Act of June 18, 2011, ch. 398, sec. 18, 2011 N.C. Sess. Laws 1678, 1686.

[3] No proceedings on remand appear to have been conducted before the Administrative Law Judge as a result of the Department's initial final agency decision.

judicial review petition was designated a mandatory complex business case and submitted to the Business Court for decision. On 3 May 2013, the Business Court entered an order in which it affirmed the Department's final decision with respect to the deductibility issue and remanded the case to the Department for the making of additional findings of fact with respect to the interest abatement issue.[4]

On 10 December 2013, the Department issued an Amended Final Agency Decision in which it adopted the Administrative Law Judge's decision with respect to the deductibility decision as its own and remanded Fidelity Bank's request for abatement of the interest assessment to the Administrative Law Judge for further proceedings. On 23 April 2015, the Administrative Law Judge entered an Amended Decision concluding that Fidelity Bank should be required to pay interest on the amount of any unpaid 2001 taxes. On 24 July 2015, the Department entered a Second Amended Final Agency Decision determining that Fidelity Bank was not entitled to deduct the Market Discount Income for purposes of its 2001 corporate income tax return and requiring Fidelity Bank to pay additional taxes and related interest in light of the Department's rejection of Fidelity Bank's assertion that the Market Discount Income that it earned during the 2001 tax year was deductible for North Carolina corporate income taxation purposes.

---

[4] Although Fidelity Bank sought appellate review of the Business Court's initial decision, the Court of Appeals dismissed Fidelity Bank's appeal as having been taken from an unappealable interlocutory order.

On 19 August 2015, Fidelity filed a petition seeking judicial review of the Department's second amended final agency decision in the Superior Court, Wake County. In its petition, Fidelity Bank requested that the Department's decision with respect to the deductibility issue in the second amended final agency decision be overturned without advancing any challenge to the Department's decision with respect to the interest abatement issue. On 20 August 2015, the proceeding resulting from the filing of Fidelity Bank's second judicial review petition was designated a mandatory complex business case and referred to the Business Court for decision. On 15 January 2016, the Department filed motions seeking the entry of orders dismissing Fidelity Bank's second judicial review petition for failure to state a claim upon which relief could be granted pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6), and entering final judgment with respect to the deductibility issue in accordance with the decision made in response to Fidelity Bank's first judicial review petition. On 23 June 2016, the Business Court entered a final judgment and order granting the Department's motions to dismiss the second judicial review petition and entering final judgment with respect to the deductibility issue consistent with the court's determination in the proceeding stemming from the first judicial review petition. *Fidelity Bank v. N.C. Dep't of Revenue*, Nos. 10 CVS 3405, 15 CVS 11311, 2016 WL 3917735 (N.C. Super. Ct. Wake County (Bus. Ct.) June 20, 2016).

On 14 July 2016, Fidelity Bank noted an appeal to the Court of Appeals from the Business Court's decision with respect to the deductibility issue in the proceeding

stemming from the first judicial review proceeding and an appeal to this Court from the Business Court's decision to dismiss the second judicial review petition for failure to state a claim upon which relief could be granted. On 20 October 2016, Fidelity Bank filed a petition with this Court seeking discretionary review of the deductibility decision prior to a determination by the Court of Appeals in the case stemming from the first judicial review proceeding. This Court allowed Fidelity Bank's discretionary review petition on 8 December 2016, heard consolidated oral argument in both cases on 13 June 2017, and now consolidates these cases for purposes of decision.

As an initial matter, we must address the correctness of the Business Court's decision to dismiss Fidelity Bank's second judicial review petition pursuant to N.C.G.S. § 1A-1, Rule 12(b)(6). In making this determination, the Business Court noted that, "although [the Business Court] did not remand the Deductibility Issue to the Department, the Department elected to include findings and conclusions on that issue in its Second Amended Final Agency decision." *Fidelity Bank*, 2016 WL 3917735, at *4. As the Business Court also noted,

> North Carolina law is clear, however, that when an appellate court (i.e., [the Business Court's] capacity here) remands a case to the trial court (i.e., the Department's capacity here), any judgments of the trial court "which were inconsistent and at variance with, contrary to, and modified, corrected, altered or reversed prior mandates of the [appellate court]" are "unauthorized and void."

*Id*. (second alteration in original) (quoting *Lea Co. v. N.C. Bd. of Transp.*, 323 N.C. 697, 699, 374 S.E.2d 866, 868 (1989) (emphasis omitted) (quoting *Collins v. Simms*,

257 N.C. 1, 8, 125 S.E.2d 298, 303 (1962))). For that reason, the Business Court concluded that "the Department did not have authority to make any findings of fact or conclusions of law concerning the Deductibility Issue in its Second Amended Final Agency Decision," rendering "the findings and conclusions in the Second Amended Final Agency Decision concerning the Deductibility Issue void and without legal effect," so as to preclude the Department's decision with respect to the deductibility issue as set out in the second amended final agency decision from being "the proper subject of judicial review." *Id.* at *5. As a result, the Business Court granted the Department's dismissal motion. *Id.* at *5, 6.

On appeal, Fidelity Bank contends that the Business Court erred by dismissing the second judicial review petition on the grounds that, given the Business Court's determination that the Department's decision with respect to the deductibility issue on remand had been made "without authority and [was] void," the Business Court should have invalidated, rather than ignored, the Department's decision to reiterate its earlier decision concerning the deductibility issue in the second amended final agency decision. On the other hand, the Department asserts that, "[b]ecause the [second judicial review proceeding] raised the same deductibility issue that the [Business Court's order in the first judicial review proceeding] had already decided, [the Business Court] was right to hold that Fidelity's petition in the [second judicial review proceeding] failed to state a claim." We agree with Fidelity Bank that the Business Court erred by dismissing that portion of its second petition for judicial

review challenging that portion of the Department's second amended final agency decision addressing the deductibility issue for failing to state a claim upon which relief can be granted.

As the Business Court concluded, the Department lacked the authority to revisit the deductibility issue on remand from the Business Court's decision in the first judicial review proceeding, making its findings and conclusions with respect to that issue void. "A void judgment . . . binds no one." *E. Carolina Lumber Co. v. West*, 247 N.C. 699, 701, 102 S.E.2d 248, 249 (1958). The "invalidity" of a void order "may be asserted at any time and in any action where some benefit or right is asserted thereunder," *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 677, 360 S.E.2d 772, 777 (1987) (quoting *E. Carolina Lumber Co.*, 247 N.C. at 701, 102 S.E.2d at 249), rendering any failure on Fidelity Bank's part to raise this issue before the Business Court and the fact that the order entered by the Business Court in the first judicial review proceeding was binding upon the Business Court in the second judicial review proceeding insufficient to justify dismissal of the second judicial review petition. Moreover, the fact that the Business Court did, in fact, determine that the relevant portion of the Department's second final agency decision was "void" and the absence of any specific showing of prejudice in addition to the risk of confusion arising from the existence of multiple orders addressing the same issue on the same facts do not support a decision to refrain from vacating a void administrative decision either. In view of the fact that "an appeal from a void order cannot be frivolous," this Court

reversed an "order . . . dismissing the appeal." *In re Foreclosure of Sharpe*, 230 N.C. 412, 418, 53 S.E.2d 302, 306 (1949). For similar reasons, we have no hesitancy in determining that a litigant is entitled to assert, in a proceeding seeking judicial review of an administrative decision, that the decision in question is void. In the event that this assertion is well founded, the reviewing court should vacate the challenged order rather than dismiss the request for judicial review for failure to state a claim. As a result, since the Department lacked the authority to address the deductibility decision on remand, the Business Court's order relating to the deductibility decision in the proceeding stemming from the second judicial review proceeding should be reversed and this case should be remanded to the Business Court for further remand to the Department with instructions to vacate that portion of the second amended final agency decision addressing the deductibility issue.

The principal substantive issue before us in this case, which is properly before this Court in connection with Fidelity Bank's appeal from the Business Court's decision to enter a final judgment upholding the Department's deductibility decision in connection with the first judicial review proceeding, is whether the Business Court erred by affirming that portion of the Department's final agency decision in which the Department determined that Fidelity Bank was not entitled to deduct the Market Discount Income that it earned during the 2001 tax year as interest on United States obligations for North Carolina corporate income taxation purposes pursuant to N.C.G.S. § 105-130.5(b)(1). In seeking relief from the Business Court's decision,

Fidelity Bank asserts that the plain and unambiguous language contained in N.C.G.S. § 105-130.5(b)(1) and 26 U.S.C. § 1276(a)(4) renders Market Discount Income deductible interest upon United States obligations for North Carolina corporate income taxation purposes. According to Fidelity Bank, the General Assembly intended to adopt the definition of "interest" contained in 26 U.S.C. § 1276(a)(4) given that the taxpayer's federal taxable income is the "baseline starting point" for determining a taxpayer's state net taxable income, *see* N.C.G.S. § 105-130.2 (2015), and that Market Discount Income is treated as interest for purposes of determining federal taxable income. More specifically, given that 26 U.S.C. § 1276(a)(4) states that Market Discount Income "shall be treated as interest for purposes of [the Code]," 26 U.S.C. § 1276(a)(4) (2012), and given that the General Assembly has adopted the Code for the purpose of determining a taxpayer's state income tax liability, *see* N.C.G.S. § 105-130.2(15), Fidelity Bank contends that the General Assembly intended that Market Discount Income should be treated as deductible interest upon United States obligations for state corporate income taxation purposes. As a result, given that the Business Court ignored the plain language of the relevant provisions of state law in upholding the Department's decision with respect to the deductibility issue, Fidelity Bank contends that the Business Court's decision with respect to that issue should be reversed.

The Department, on the other hand, contends that the Business Court properly determined that Market Discount Income does not constitute deductible "interest" for

North Carolina income taxation purposes. According to the Department, the term "interest" as used in N.C.G.S. § 105-130.5 should be understood, in accordance with its plain meaning, as "periodic payments received by the holder of a bond," citing *Polaroid Corp. v. Offerman*, 349 N.C. 290, 297, 507 S.E.2d 284, 290 (1998), *cert. denied*, 526 U.S. 1090 (1999), *abrogated on other grounds by Lenox, Inc. v. Tolson*, 353 N.C. 659, 663, 548 S.E.2d 513, 517 (2001). Even though N.C.G.S. § 105-130.2(15) provides that a taxpayer's income for state taxation purposes is determined on the basis of the taxpayer's federal taxable income, the statutory provisions governing North Carolina income taxation do not adopt the definitions contained in the Internal Revenue Code on a wholesale basis. Instead, the Department asserts that the General Assembly has adopted Internal Revenue Code provisions for use in determining a taxpayer's obligation to pay North Carolina income taxes on a selective basis, so that, for example, N.C.G.S. § 105-130.5(b) incorporates Internal Revenue Code provisions in only twelve of its twenty-one subsections. "[W]hen no such reference appears—as here—words used in the Revenue Act do not take on any specialized meaning they might have under the Code." The Department claims that, had the General Assembly intended to incorporate the Internal Revenue Code's definitions into N.C.G.S. § 105-130.5(b)(1), it would have done so expressly. In addition, the Department contends that 26 U.S.C. § 1276 of the Code has no application outside the context of federal tax law given its statement that Market Discount Income "shall be treated as interest for purposes of [the Code]," quoting 26

U.S.C. § 1276(a)(4). As a result, the Department contends that the Business Court's decision with respect to the deductibility issue should be affirmed.

According to N.C.G.S. § 105-130.2(15), a taxpayer's "State net income" is "[t]he taxpayer's federal taxable income as determined under the Code,[5] adjusted as provided in G.S. 105-130.5." N.C.G.S. § 105-130.2(15). N.C.G.S. § 105-130.5(b) allows a taxpayer to take certain "deductions from federal taxable income" "in determining State net income." *Id*. § 105-130.5(b) (2015). Among the deductions allowed in N.C.G.S. § 105-130.5(b) is one for "[i]nterest upon the obligations of the United States or its possessions, to the extent included in federal taxable income," provided that "interest upon the obligations of the United States shall not be an allowable deduction unless interest upon obligations of the State of North Carolina or any of its political subdivisions is exempt from income taxes imposed by the United States."[6] *Id*. § 105-130.5(b)(1). As a result, as both parties appear to agree, the proper resolution of the

---

[5] According to N.C.G.S. § 105-130.2(2), which incorporates a definitions set out in N.C.G.S. § 105-228.90, "Code" is defined as "[t]he Internal Revenue Code as enacted as of January 1, 2017, including any provisions enacted as of that date that become effective either before or after that date," N.C.G.S. § 105-228.90(b)(1b).

[6] In addition to its decision that the Department had correctly determined that Market Discount Income on the discounted bonds that matured in 2001 was not 'interest," the Business Court also concluded that the deduction that Fidelity Bank had attempted to take was barred by the reciprocity provision contained in N.C.G.S. § 105-130.5(b)(1). In view of our decision that Market Discount Income is not "interest" for purposes of N.C.G.S. § 105-130.5(b)(1), we need not address the issue of whether the deduction in question was barred by the reciprocity provision contained in N.C.G.S. § 105-130.5(b)(1) and express no opinion as to the correctness of the interpretation of that statutory provision adopted by the Department and the Business Court.

substantive issue that is before us in this case hinges upon the meaning of the term "interest" as used in N.C.G.S. § 105-130.5(b)(1).

"In resolving issues of statutory construction, we look first to the language of the statute itself." *Walker v. Bd. of Trs. of the N.C. Local Gov'tal Emps. Ret. Sys.*, 348 N.C. 63, 65, 499 S.E.2d 429, 430 (1998) (quoting *Hieb v. Lowery*, 344 N.C. 403, 409, 474 S.E.2d 323, 327 (1996)).

> When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required. *See Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment. *See Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs of Town of Nags Head*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) ("The best indicia of that intent are the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish.").

*Diaz v. Div. of Soc. Servs.,* 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006). Thus, the initial issue that must be addressed in construing the relevant statutory language requires a determination of whether the language in question is ambiguous or unambiguous.

An unambiguous word has a "definite and well known sense in the law." *C.T.H. Corp. v. Maxwell*, 212 N.C. 803, 810, 195 S.E. 36, 40 (1938); *see also State Highway Comm'n v. Hemphill*, 269 N.C. 535, 539, 153 S.E.2d 22, 26 (1967) (stating that language in a statute is unambiguous when it "express[es] a single, definite and sensible meaning") (quoting *State ex rel. Long v. Smitherman*, 251 N.C. 682, 684, 111

S.E.2d 834, 836 (1960))). In the event that the General Assembly uses an unambiguous word without providing an explicit statutory definition, that word will be accorded its plain meaning. *See Walker*, 348 N.C. at 66, 499 S.E.2d at 431 (stating that, although "[t]he word 'terminate' is undefined in chapter 128 of the North Carolina General Statutes," "[a]s this word is unambiguous, . . . we accord it its plain meaning"); *see also Poole v. Miller*, 342 N.C. 349, 352, 464 S.E.2d 409, 411 (1995) (stating that, although "[t]he word 'judgment' is undefined in Rule 68," "[a]s this word is unambiguous, we shall accord it its plain meaning"); *In re Appeal of Clayton-Marcus Co.*, 286 N.C. 215, 219, 210 S.E.2d 199, 202-03 (1974) (stating that, "[i]n the construction of any statute, including a tax statute, words must be given their common and ordinary meaning, nothing else appearing," and "[w]here, however, the statute, itself, contains a definition of a word used therein, that definition controls, however contrary to the ordinary meaning of the word it may be" (citations omitted)). On the other hand, in the event that the relevant statutory provision is ambiguous, its meaning must be determined utilizing the ordinary rules of statutory construction.

"The primary rule of construction of a statute is to ascertain the intent of the legislature and to carry out such intention to the fullest extent." *Burgess*, 326 N.C. at 209, 388 S.E.2d at 137 (citation omitted). As we have already noted, "[t]he best indicia of that intent are the language of the statute . . . , the spirit of the act and what the act seeks to accomplish." *Coastal Ready-Mix Concrete*, 299 N.C. at 629, 265 S.E.2d at 385 (citations omitted). As a general proposition, when the General

Assembly intends to adopt provisions or definitions from other sources of law into a statute, it does so "by clear and specific reference." *See Lutz Indus. v. Dixie Home Stores*, 242 N.C. 332, 340, 88 S.E.2d 333, 339 (1955) (stating that "[t]he 1941 Act ratified and adopted the North Carolina Building Code published in 1936 by clear and specific reference"). "Special canons of statutory construction apply when the term under consideration is one concerning taxation." *In re Estate of Kapoor*, 303 N.C. 102, 106, 277 S.E.2d 403, 407 (1981). "[W]hen the statute provides for an *exemption* from taxation . . . any ambiguities are resolved in favor of taxation." *Id.* at 106, 277 S.E.2d aat 407 (citing *In re Clayton-Marcus*, 286 N.C. 215, 210 S.E.2d 199 (1974)).

As both parties have observed, there is no statutory definition of the word "interest" as used in N.C.G.S. § 105-130.5(b)(1). The Business Court, however, defined the term in question in the context of bonds as "periodic payments received by the holder of a bond."[7] *Fidelity Bank v. N.C. Dep't of Revenue*, No. 10 CVS 3405, 2013 WL 1896987, at *5 (N.C. Super. Ct. Wake County (Bus. Ct.) May 3, 2013). In view of the fact that the term "interest" has a "definite and well-known sense in the law," *C.T.H. Corp.*, 212 N.C. at 810, 195 S.E. at 40, and that this "plain meaning" definition is consistent with the manner in which "interest" is used in other statutory provisions and judicial decisions, *see e.g.,* N.C.G.S. § 143-134.1(a) (2015) (stating that

---

[7] Fidelity Bank does not appear to dispute that this is a proper "plain meaning" definition of "interest," assuming that the use of such a definition is appropriate.

"the prime contractor shall be paid interest . . . at the rate of one percent (1%) per month"); *Knight v. Braswell*, 70 N.C. 708, 711-12 (1874) (enforcing a contract requiring that interest owed on a bond be paid annually), we conclude, as did the Business Court, that the undefined term "interest" as used in N.C.G.S. § 105-130.5(b)(1) is unambiguous and should be understood in accordance with its plain meaning as involving "periodic payments received by the holder of a bond," *Fidelity Bank*, 2013 WL 1896987, at *5, and that, had the General Assembly intended for the term "interest" as used in N.C.G.S. § 105-130.5(b)(1) to be defined in accordance with 26 U.S.C. § 1276(a)(4), it would have incorporated that definition into N.C.G.S. § 105-130.5(b)(1) "by clear and specific reference," *see Lutz Indus.*, 242 N.C. at 340, 88 S.E.2d at 339. Since the validity of Fidelity Bank's challenge to the Business Court's decision hinges upon the extent to which the Business Court correctly interpreted the meaning of the term "interest" as that term is used in N.C.G.S. § 105-130.5(b)(1) and since the Business Court did not err by defining the term "interest" for purposes of N.C.G.S. § 105-130.5(b)(1) as "periodic payments received by the holder of a bond," we hold that the Business Court correctly concluded that the Market Discount Income that Fidelity Bank received on the discounted bonds that matured during 2001 was not deductible for North Carolina corporate income tax purposes.

Although Fidelity Bank has vigorously asserted that the plain language of the relevant provisions of Chapter 105 of the General Statutes unambiguously indicates that the General Assembly intended that the term "interest" as used in N.C.G.S. §

105-130.5(b)(1) be understood to include Market Discount Income given that Market Discount Income is treated as "interest" for purposes of federal corporate income taxation, we do not find this argument persuasive. To be sure, 26 U.S.C. § 1276(a)(1) states that, "[e]xcept as otherwise provided in this section, gain on the disposition of any market discount bond shall be treated as ordinary income to the extent it does not exceed the accrued market discount on such bond" and 26 U.S.C. § 1276(a)(4) provides that "any amount treated as ordinary income under [26 U.S.C. § 1276(a)(1)] shall be treated as interest for purposes of this title." 26 U.S.C. § 1276(a)(1), (a)(4) (2012). For that reason, Market Discount Income is certainly treated as interest income for the purpose of determining the taxpayer's federal taxable income. *See* 26 U.S.C. § 860C(b)(1)(B) (2012). However, the fact that Market Discount Income is treated as interest for purposes of determining federal taxable income does not, Fidelity Bank's argument to the contrary notwithstanding, mean that Market Discount Income should be treated as "interest" for all purposes under the North Carolina Revenue Act.

As a general proposition, there is nothing illogical about including Market Discount Income, along with all other revenue derived from a discounted bond, as interest for the purpose of calculating federal taxable income while refusing to treat Market Discount Income as interest for purposes of the deduction for interest upon United States obligations allowed by N.C.G.S. § 105-130.5(b)(1). Instead, any decision to require that Market Discount Income be treated as interest for the

purpose of both calculating federal taxable income and the deduction from federal taxable income authorized by N.C.G.S. § 105-130.5(b)(1) requires specific support in the relevant statutory language. We are unable to read the relevant provisions of the North Carolina Revenue Act to require the consistency of treatment for which Fidelity Bank contends.

A careful review of the provisions of Chapter 105 of the General Statutes demonstrates, as the Department notes, that the General Assembly has not adopted the definitions set out in the Internal Revenue Code into the North Carolina Revenue Act on any sort of wholesale basis. Instead, the General Assembly has selectively incorporated certain of the definitions contained in the Internal Revenue Code into the North Carolina Revenue Act. Although a number of the deductions from federal taxable income for purposes of calculating North Carolina net taxable income incorporate various provisions of the Internal Revenue Code, no such reference to any provision of the Code appears in N.C.G.S. § 105-130.5(b)(1). In the event that the provisions of the Internal Revenue Code were binding throughout the North Carolina Revenue Act, these references to the Code in other portions of N.C.G.S. § 105-130.5(b) would be superfluous. *State v. Buckner*, 351 N.C. 401, 408, 527 S.E.2d 307, 311 (2000) (stating that, "[i]f possible, a statute must be interpreted so as to give meaning to all of its provisions"); *Porsh Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 556, 276 S.E.2d 443, 447 (1981) (stating that "a statute must be considered as a whole and construed, if possible, so that none of its provisions shall be rendered useless or

redundant"). As a result, the essential argument advanced in order to justify the construction of N.C.G.S. § 105-130.5(b)(1) advocated for by Fidelity Bank lacks support in the overall structure and literal language of the North Carolina Revenue Act.

Although Fidelity Bank has directed our attention to the provision in N.C.G.S. § 105-130.5(b)(1) making "[i]nterest upon the obligations of the United States or its possessions" deductible "to the extent included in federal taxable income," we are unable to read this language as requiring that Market Discount Income be treated as "interest" for purposes of the deduction authorized by N.C.G.S. § 105-130.5(b)(1). Instead of shedding light on the definition of "interest," the language in question, when read literally, simply indicates that anything that qualifies as "interest" for purposes of N.C.G.S. § 105-130.5(b)(1) is only deductible to the extent that it is "included in federal taxable income." Thus, we are unable to construe N.C.G.S. § 105-130,5(b)(1) in the manner contended for by Fidelity Bank.

As a result, for all of these reasons, we conclude that the Business Court's decision concerning the deductibility issue in its order resolving the issues raised in the first judicial review petition and rendered final in the orders addressing the second judicial review petition should be affirmed. However, we further conclude that the Business Court's decision to dismiss the portions of the second judicial review petition challenging the Department's decision concerning the deductibility issue in the second amended final agency decision was erroneous. For that reason, we

conclude that the Business Court's dismissal decision should be reversed and that the case arising from Fidelity Bank's second judicial review proceeding should be remanded to the Business Court for further remand to the  Department for the sole purpose of entering an order vacating its remand decision with respect to the deductibility issue.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.